## JOE ZAMANI v. OTTER TAIL POWER COMPANY.[1]

January 16, 1931.

No. 28,231.

[1]Reported in 234 N. W. 457.

*N. F. Field* and *Cyrus A. Field,* for appellant.

*Leonard Eriksson* and *Harold Ranstad,* for respondent.

OLSEN, J.

Defendant appeals from the judgment awarding to plaintiff $1,150 as damages for the permanent injury to his land caused by the erection by defendant of a dam in the Otter Tail river.

Defendant is a public service corporation, organized under the laws of this state for the purpose of producing electric current by means of water-power and distributing and selling such current to the public for lighting, power, and heating purposes. G. S. 1923, § 7432, as amended, 2 Mason, 1927, id. In 1925 defendant built a dam across the Otter Tail river, known as the Friberg dam, and in connection therewith a power plant to produce electric current by water-power. According to plaintiff's evidence, the dam resulted in the flooding of plaintiff's land, located on the river some five and a half miles above the dam. The flooding and injury commenced early in the year 1926. This action was commenced in May, 1929, to recover damages for permanent injury to the land caused by the construction of the dam. The measure of damages claimed and adopted was the difference in. the market value of the land in the condition it was immediately before the dam was constructed and its market value after the dam was constructed, in the flooded condition caused by the dam.

The defendant by its answer denies plaintiff's claim as to damages, and in addition thereto alleges that the action is barred by the statute of limitations, G. S. 1923, § 9193(3), as amended, 2 Mason, 1927, id. limiting the commencement of actions to recover damages caused by a mill dam to two years. Defendant pleads that this dam is a mill dam and that the action is barred by the two-year limitation.

If the dam in question is a mill dam within the meaning of the limitation statute, this action for damages is barred. Priebe v. Ames, 104 Minn. 419, 116 N. W. 829, 17 L.R.A. (N.S.) 206.

The limitation statute in question originated in the Laws of 1857 and became St. 1849-1858, c. 129. The chapter heading is "Dams and Mills." Section 1 provides that any person desiring to erect and maintain a mill dam in a non-navigable stream and to obtain flowage rights therefor may condemn property for that purpose by procceeding as in said chapter provided. Section 17 provides that no action for damages occasioned by the erection and maintenance of a mill dam shall be sustained unless the action be brought within two years after the erection of such dam. At the time this act was passed and for some time thereafter, about the only industries in this state making use of water-power so as to need dams were mills for grinding grain and sawing lumber. A dam for either purpose was properly characterized as a mill dam. However the taking of property for a sawmill might not be for a public use. The act, without change, became R. S. 1866, c. 31. The act of 1857, and the limitation therein, viewed in the light of then existing conditions, might reasonably have been construed as applying only to strictly mill dams.

It soon became apparent that water-power was suitable and needed for other purposes than the grinding of grain and sawing of lumber, and the legislature in 1876, by c. 120 of the laws of that year, amended R. S. 1866, c. 31, § 1, so as to broaden the scope of that chapter. The amendment provided that any person, corporation, manufacturing company, or joint stock association desiring to erect and maintain a dam across any non-navigable stream and acquire flowage rights therefor, and use the water for manufacturing purposes, might obtain the right so to do by condemnation proceedings as in said c. 31 provided. As so amended, R. S. 1866, c. 31, without material change, became G. S. 1878, c. 31, and G. S. 1894, c. 31.

The words "mill dam" are omitted and not used in the amendment of 1876. The only statement therein as to the purpose of the

dam is that the water is to be used for manufacturing purposes. The conversion of water-power into electric current by the use of labor and machinery is essentially a manufacturing process, and the electric energy produced is now very generally used in numerous manufacturing processes. Electric light and power plants have been held to be manufacturing establishments under various statutes. Commonwealth v. Keystone E. L. H. & P. Co. 193 Pa. 245, 44 A. 326; Lamborn v. Bell, 18 Colo. 346, 32 P. 989, 20 L. R. A. 241; People ex rel. B. E. M. Co. v. Wemple, 129 N. Y. 543, 29 N. E. 808, 14 L. R. A. 708; Beggs v. Edison E. I. Co. 96 Ala. 295, 11 So. 381, 38 A. S. R. 94; Burke v. Mead, 159 Ind. 252, 64 N. E. 880. In City W. P. Co. v. City of Fergus Falls, 113 Minn. 33, 35, 128 N. W. 817, 32 L.R.A.(N.S.) 59, Ann. Cas. 1912A, 108, which involved a dam for a power plant the same as our present case, the law we are considering was stated to be still in force. It was held constitutional in Miller v. Troost, 14 Minn. 282 (365).

The amendment of 1876 did not change the wording of § 17 of the act. That section retained the wording limiting the time of commencement of actions for damages "occasioned by the erection and maintenance of a mill dam" to two years after the erection of the dam. But a reading and consideration of the entire act as it was, both before and after the amendment, indicates that § 17 was intended to and did include and cover such dams as were provided for in § 1; and the words "mill dam" in § 17 were used as a general term to describe such dams. The word "mill" has a broad meaning. It is defined by G. S. 1923 (1 Mason, 1927) §.4049, as including "any premises where water, steam, electrical or other mechanical power is used in the aid of manufacturing or printing process there carried on." Its meaning extends also to engines or machines moved by water, wind or steam, for many purposes. State v. Livermore, 44 N. H. 386, 387; Lamborn v. Bell, 18 Colo. 346, 32 P. 989, 20 L. R. A. 241. A smelter was held to be a mill in McAllister & McCone v. Benson M. & S. Co. 2 Ariz. 350, 16 P. 271.

R. L. 1905 made no change in the law relating to mills and dams. The revision commission did rearrange the sections and simplify the wording. They placed the sections relating to condemnation pro-

cedure in the new chapter 41 of the Revised Laws, a general chapter relating to eminent domain; and transferred § 17 into § 4078 of the Revised Laws providing what actions shall be commenced within two years after the cause of action accrues. No amendment or change of meaning was intended or made. Section 1 of the mills and dams law and three other sections thereof were placed in c. 42 of the Revised Laws, which chapter relates among other things to water-powers. The wording of § 1 was changed so as to provide that any person desiring to build and maintain or to improve a dam across a non-navigable stream, for milling or manufacturing purposes, could obtain flowage rights therefor by proceeding under c. 41 of the Revised Laws. There has since been no material change in the law.

The conclusion reached is that the dam here in question is one built for milling or manufacturing purposes and that the two-year limitation applies.

Prior decisions of this court have determined: (1) That the two-year limitation applies only to an action to recover damages and does not prevent an action to abate or enjoin a nuisance or trespass where the flooding is continuing; (2) that if the dam is increased in height after its erection damages may be recovered for any added flooding caused by the raising of the dam, by action commenced within two years after such added flooding commences; (3) that the time limited commences to run, not necessarily from the time the dam was erected, but from the time when damage is first caused thereby. Thornton v. Turner, 11 Minn. 237 (336) ; Cook v. Kendall, 13 Minn. 297 (324) ; Thornton v. Webb, 13 Minn. 457 (498) ; Hempsted v. Cargill, 46 Minn. 118, 48 N. W. 558; Priebe v. Ames, 104 Minn. 419, 116 N. W. 829, 17 L.R.A.(N.S.) 206.

We do not find much cause for plaintiff's apprehension that great injustice will be done by holding this action for permanent damages barred. Plaintiff and others in a like situation have 15 years from the time of the erection of the dam in which to bring actions to abate or enjoin the flooding of their lands. By such an action defendant may be forced to abate the flooding or resort to

360

condemnation proceedings. If defendant seeks to condemn flowage rights, the plaintiff in such an action will be entitled to recover all permanent damages to his land from the time of such condemnation; in other words, all future damages. He may not in such proceeding recover damages for past flooding, but we surmise that the difference in that regard will be slight or negligible. If plaintiff has now been barred from maintaining an action at law for damages, his right thereto has been lost by his own failure to act with that promptness which the statute requires.

There is no dispute as to when the dam was built or as to when the water rose so as to damage plaintiff's land, if it was damaged. Plaintiff's own testimony was directed to show the difference in the height of the water as it was in 1925, before the dam was built, and as it was in 1926 and subsequent years, after the dam was built. He testified that the water rose in 1926, and thereafter remained, flooding his land, except that on two occasions the water was temporarily lowered by defendant's letting it out of the millpond. Motions for a directed verdict and thereafter for judgment notwithstanding were made by the defendant, on the ground that the action was barred by the limitation statute, and denied by the court. In its charge the court made no reference to the statute of limitations. We think it conclusively appears that any damage suffered by plaintiff commenced more than two years before this action was brought.

We have not overlooked counsel's argument as to the distinction sought to be drawn from the enactment of L. 1893, p. 189, c. 74, now found in G. S. 1923, § 7432, as amended, 2 Mason, 1927, id. providing for the incorporation of public service corporations such as this defendant, and "manufacturing" corporations mentioned in the mills and dams law. The mills and dams law however treated only the subject of condemnation for flowage rights and the limitation of actions for damages. It did not provide for the incorporation of any kind of a corporation. R. S. 1866, c. 34, was the law providing for incorporation of companies and defining their powers. Section 1 of that chapter was the law providing for the formation

of corporations having the power to acquire property by condemnation. It provided for the incorporation of companies to operate railways, telegraph lines, and canals for slack-water navigation, and all works of internal improvement which require the taking of private property or any easement therein. That the legislature, in 1893, deemed it advisable to amend this section by L. 1893, p. 189, c. 74, so as more specifically to enumerate corporations coming within the expression "all works of internal improvement which require the taking of private property" is not of much importance. The reading of L. 1893, p. 189, c. 74, shows this, for it provides for the incorporation of companies for the construction, maintenance, and operation of any work or works of internal improvement requiring the taking of private property for public use, "including railways * * * and any work or works * * * for supplying the public with water, gas light, electric light, heat or power." The amendment has the effect of specifically enumerating what corporations were included in the class of corporations organized to construct, operate, and maintain works of internal improvement which require the taking of private property for public use.

We reach the conclusion that defendant was entitled to a directed verdict and to an order for judgment notwithstanding the verdict. Consideration of other assignments of error is not necessary.

Judgment reversed with direction to order judgment for defendant.

HILTON, J. took no part.