## IN RE ANSWER OF MINNESOTA POWER & LIGHT COMPANY FOR DETERMINATION OF OBJECTIONS TO CERTAIN TAXES v. TAXING DISTRICT, CITY OF FRASER, SCHOOL DISTRICT NO. 695.

182 N. W. (2d) 685.

December 24, 1970—No. 42523.

*John C. Arko,* County Attorney, and *James J. Bang,* Assistant County Attorney, for appellant.

*Sullivan, Hanft, Hastings, Fride & O'Brien* and *Donald D. Harries,* for respondent.

*Douglas M. Head,* Attorney General, and *C. Hamilton Luther,* Deputy Attorney General, for the commissioner of taxation, amicus curiae.

*Ryan & Ryan* and *Joseph W. Ryan,* for Northern Minnesota Power Association, amicus curiae.

KNUTSON, CHIEF JUSTICE.

This is an appeal by a taxing district from a summary judgment entered pursuant to an order of the district court granting petitioner, Minnesota Power & Light Company, relief from payment of ad valorem taxes on certain of its personal property.

The trial court's decision, which is based on a stipulation of facts, held that the property involved was exempt from ad valorem taxes. The pertinent portions of that stipulation are as follows:

"STIPULATION AND MOTIONS
\* \* \* \* \*

"FOR THE PURPOSE of the separate motions made herein [for summary judgment] the following facts are hereby stipulated by and between Minnesota Power & Light Company, petitioner herein, and the County of St. Louis on behalf of the applicable Taxing Districts, respondents herein.

"1. The petitioner is a Minnesota corporation engaged in the business of manufacturing, processing, producing, selling at wholesale and retail and distributing electric energy or elec-

tricity and is the owner of real and personal property situated in the County of St. Louis.

"2. On the assessment date, May 1, 1967, petitioner owned certain personal property located in the Taxing District which property consisted of the following individual items having the following market, adjusted market and assessed values:

| Item | Market Value | Adjusted Market Value | Assessed Value |
|---|---|---|---|
| 1965 model 1-5 KVA transformer | $ 135.00 | $ 45.00 | $ 18.00 |
| 1943 model 1-10 KVA transformer | 105.00 | 35.00 | 14.00 |
| 1948 model 1-15 KVA transformer | 135.00 | 45.00 | 18.00 |
| 1953 model 1-25 KVA transformer | 255.00 | 85.00 | 34.00 |
| Miscellaneous Personal Property | 2,397.00 | 800.00 | 320.00 |
| | $3,027.00 | $1,010.00 | $404.00 |

"3. Pursuant to statute, prior to the passage of the Tax Reform and Relief Act of 1967 identified in paragraph numbered 4 below, petitioner prepared and filed a personal property return with the appropriate assessing officials. Thereafter the County Assessor placed a total assessed value on the property above listed of $404.00. The County Auditor thereafter spread the applicable mill rate against said assessed value resulting in a tax payable in 1968 of $85.24. Said tax was not paid and the County Treasurer certified to the above Clerk of Court a list of all personal property taxes remaining delinquent July 1, 1968, which list included the above assessment and tax. Within ten days after said certification, petitioner duly filed its answer with the Clerk of Court pursuant to M. S. A. 272.02, alleging in part that the

property above listed was exempt from such ad valorem personal property taxes.

"4.  In 1967 there was enacted into law the Tax Reform and Relief Act of 1967 (Chapter 32, 1967 Extra Session Laws) which provides in part in M. S. A. 272.02(11)(b) that upon a proper election the following property shall be exempt from ad valorem taxation:

" '(b)  Tools and machinery which by law is considered as personal property used or useable in construction of buildings or highways or in the manufacture, processing, production, sale or distribution of marketable products including but not limited to goods, wares and merchandise and processing of food and fiber.'

"As provided by M. S. A. 272.02, petitioner timely elected to have its 'Tools and Machinery' exempt by a written declaration delivered to the County Assessor.

"5.  For the purpose of the Separate Motions made herein in only this case, it is agreed that all of the items listed above in paragraph 2 are personal property and that the following items having the following values are 'Tools and Machinery' used or useable in the manufacture, processing, production, sale or distribution of electrical energy:

| Item | Market Value | Adjusted Market Value | Assessed Value |
|---|---|---|---|
| 1965 model 1-5 KVA transformer | $135.00 | $ 45.00 | $18.00 |
| 1943 model 1-10 KVA transformer | 105.00 | 35.00 | 14.00 |
| 1948 model 1-15 KVA transformer | 135.00 | 45.00 | 18.00 |
| 1953 model 1-25 KVA transformer | 255.00 | 85.00 | 34.00 |
| Total | $630.00 | $210.00 | $84.00 |

"6. On or about August 30, 1967, the Commissioner of Taxation for the State of Minnesota issued a bulletin which was mailed to all assessors, including the County Assessor of St. Louis County, entitled MINNESOTA PROPERTY TAX BULLETIN, Volume 3, Number 5, which stated, in effect, that 'Tools and Machinery' used in the production, distribution and sale of electricity were not exempt under the Tax Reform and Relief Act of 1967 (M. S. A. 272.02(11)(b)); and the fifth paragraph of said 'bulletin' read as follows:

" ' "MARKETABLE PRODUCTS" for the purpose of Class B (Clause 11; Article IV) is defined as tangible marketable products. The word tangible is defined as something which can be touched, such as a table or chair. Examples of intangibles, electricity, air, etc.'

"7. Based on said 'bulletin' the County Assessor did not exempt the personal property of petitioner.

"8. There is no Legislative History extant which indicates whether or not the Legislature intended to exempt the 'Tools and Machinery' of the electric utility industry; and no implication is to be drawn from this paragraph numbered 8 that the parties are stipulating that there is any ambiguity in the language of M.S.A. 272.02(11)(b).

"9. The sole issue to be determined by the court upon separate motions made herein is:

"Whether 'marketable products' as used in M.S.A. 272.02(11)(b) includes electric energy or electricity?

"10. If the Court determines said issue adversely to petitioner Judgment upon Findings of Fact, Conclusions of Law and Order for Judgment should be entered showing

| Taxes Due | Taxes Paid | Deficiency |
|-----------|------------|------------|
| $85.24    | $76.72     | $8.52      |

For the purpose of this Motion only respondent waives penalties and interest on said deficiency arising up to the entry of judgment.

"If the Court determines said issue adversely to respondent Judgment upon Findings of Fact, Conclusions of Law and Order for Judgment should be entered showing

| Taxes Due | Taxes Paid | Refund |
|-----------|------------|--------|
| $67.52 | $76.72 | $9.20" |

Art. IV, § 2, of the 1967 Tax Reform and Relief Act (Ex. Sess. L. 1967, c. 32) amended Minn. St. 1965, § 272.02, exempting certain described property from taxation by adding the following provision, now Minn. St. 272.02(11):

"(11) The taxpayer shall elect whether to be exempted with respect to category (a) or (b) as hereinafter defined.

"(a) All inventories, stocks of merchandise of all sorts, manufacturers material, manufactured articles including the inventories of manufacturers, wholesalers, retailers and contractors; and the furnishings of a room or apartment in a hotel, rooming house, tourist court, motel or trailer camp, the rental value of which is subject to the excise tax provided in Extra Session Laws 1967, Chapter 32, or

"(b) Tools and machinery which by law is considered as personal property used or useable in construction of buildings or highways or in the manufacture, processing, production, sale or distribution of marketable products including but not limited to goods, wares and merchandise and processing of food and fiber.

"* * * If no election is made by the taxpayer, it shall be presumed that the taxpayer has elected to come under the provisions of (a) of this paragraph."

It is conceded that the petitioner made its election under this statutory provision to be exempt under category (b).

Subsequent to the adoption of the act, the commissioner of taxation issued a bulletin addressed to all assessors. In this bulletin, which is set forth in the stipulation, he attempted to deny to those generating and distributing electricity the exemption which they contend the statute gives them under (b). Appel-

lant contends the bulletin was issued under powers conferred upon the commissioner under Minn. St. 270.06, which reads in part:

"It shall be the duty of the commissioner of taxation and he shall have power and authority:

"(1) To have and exercise general supervision over the administration of the assessment and taxation laws of the state, over assessors, town, county, and city boards of review and equalization, and all other assessing officers in the performance of their duties, to the end that all assessments of property be made relatively just and equal in compliance with the laws of the state."

This bulletin was not a rule adopted pursuant to the procedures set forth in § 15.0412 of the Administrative Procedure Act, Minn. St. 15.01 to 15.41, although the act is expressly applicable to the commissioner. Minn. St. 15.0411. Rather, it was simply a bulletin or directive to the assessors emanating from the office of the commissioner of taxation. Nor did the commissioner avail himself of the alternative of seeking an attorney general's opinion, which he might do under § 270.07, subd. 1. That provision, so far as material, reads:

"* * * The commissioner may refer any question that may arise in reference to the true construction of this chapter to the attorney general, and his decision thereon shall be in force and effect until annulled by the judgment of a court of competent jurisdiction."

It is contended by appellant that the commissioner's interpretation of the statute is entitled to weight. Ordinarily that is true if the interpretation construes an ambiguous statute and, particularly, if the interpretation is longstanding. In re Estate of Abbott, 213 Minn. 289, 296, 6 N. W. (2d) 466, 469. But here neither of these factors is present. The language of the statute is not ambiguous, and the ruling was challenged almost im-

mediately. The commissioner's addition of the word "tangible" to "marketable products" and his interpretation of the meaning of "tangible" simply added something to the statute which is not there. This goes far beyond interpretation of the statute. The commissioner has no power to change the statute. If its meaning is unambiguous, he must give effect to the plain language used by the legislature.

Appellant urges us to reverse on account of the dire consequences to our tax system which would, it claims, result from affirmance. We refuse to be drawn into a philosophical discussion of the wisdom of legislation. That is a function of the legislature, not of the courts. It is our function to interpret the statutes, giving the language used by the legislature its usual and ordinary meaning. It is quite obvious to us from the small amount involved in this case that it is a test case, the outcome of which may extend far beyond it. Nor does the fact that other corporations generating electricity have failed to claim exemption under category (b) influence our decision. On the meager record before us, we have no way of knowing whether they intentionally chose to come under category (a) or if they simply overlooked the possible benefits of electing to come under (b) and thereby automatically came under (a). It does appear that similar actions are pending in other counties in which petitioner does business. Pursuant to a stipulation between petitioner and taxing officials in those counties, courts in those actions have entered orders whereby, to facilitate tax collections until this dispute has been resolved, petitioner may pay 90 percent of taxes on property it claims is exempt under § 272.02(11)(b) "under protest" without losing any defenses to such taxation.

It might also be mentioned that, significantly, paragraph 5 of the stipulation provides in part:

"For the purpose of the Separate Motions made herein *in only this case,* it is agreed that all of the items listed above in paragraph 2 are personal property and that the following items

having the following values are 'Tools and Machinery' *used or useable in the manufacture, processing, production, sale or distribution of electrical energy:*" (Italics supplied.)

Whether the property so listed in paragraph 2 would be classified as it was in the stipulation if a finding were to be based on evidence, we do not now decide. See, for instance, State ex rel. St. Paul City Ry. Co. v. Minnesota Tax Comm. 128 Minn. 384, 150 N. W. 1087; State ex rel. Minneapolis Gas Light Co. v. Minnesota Tax Comm. 132 Minn. 419, 420, 157 N. W. 638, 639. But cf. State v. Clarkson Coal & Dock Co. 188 Minn. 106, 246 N. W. 538.

For the purpose of this decision only, we will accept the stipulation, although the practice of submitting these cases on stipulations of facts that may or may not be sustainable by proof, only to obtain an advisory opinion on a question of law is not one to be encouraged. It would be much better to establish facts by proof so that we would have a record on which to base our decision without assuming as true something which may not be sustainable as a matter of law.

Assuming that the items mentioned in paragraph 2 of the stipulation are personal property used or useable in the manufacture, processing, production, sale, or distribution of electrical energy, we are convinced that the trial court correctly held that electrical energy or electricity is a "marketable product" within the meaning of § 272.02(11).

The trial court relied mainly on Curry v. Alabama Power Co. 243 Ala. 53, 8 So. (2d) 521; Cuyler v. City Power Co. 74 Minn. 22, 76 N. W. 948; Vencedor Investment Co. v. Highland Canal & Power Co. 125 Minn. 20, 145 N. W. 611; and Zamani v. Otter Tail Power Co. 182 Minn. 355, 234 N. W. 457.

In a different context, we held in the three last-mentioned cases that the production of electricity or electrical current involves manufacturing or the process of manufacturing. In the Zamani case we said (182 Minn. 358, 234 N. W. 458):

"* * * The conversion of water-power into electric current

by the use of labor and machinery is essentially a manufacturing process, and the electric energy produced is now very generally used in numerous manufacturing processes. Electric light and power plants have been held to be manufacturing establishments under various statutes."

The case of Curry v. Alabama Power Co. *supra,* frequently cited, involved a situation somewhat similar to that before us. The action was brought for a declaratory judgment to determine the validity of an assessment of use taxes made under Alabama's Use Tax Act. In an exhaustive opinion, the Alabama court held that a corporation engaged in generating and distributing electricity was a manufacturing corporation and came within a statutory provision exempting machines used in manufacturing tangible personal property from the tax.

In the case of Hetherington v. Camp Bird Co. 70 Colo. 531, 533, 202 P. 1087, 1088, the Colorado court said:

"It is well settled that electricity made by artificial means is a product of manufacture, and is personal property."

While there are cases to the contrary, the weight of authority and the trend of nearly all modern decisions are to the effect that electricity produced by machinery for commercial purposes constitutes personal property within the meaning of tax exemption statutes. See, generally, 51 Am. Jur., Taxation, § 595; 55 C. J. S., Manufactures, § 4(g); Annotation, 17 A. L. R. (3d) 7, 102.

We then get down to the question of whether electricity is a "marketable product." That it is marketable can hardly be open to doubt. Every householder, when he receives his monthly bill for electricity, will attest to its marketability. There is little authority precisely on the question of whether it is a *product* in a literal sense. Webster's Third New International Dictionary, p. 1810, has a number of definitions of the word "product." Among them are, "something produced by physical labor or intellectual effort" and "something produced naturally or as the result of a natural process (as by generation or growth)."

'One of the few cases that have considered the precise question of whether electricity is a product is State ex rel. Spillman v. Interstate Power Co. 118 Neb. 756, 226 N. W. 427, which was a suit in equity to enjoin the defendants from allegedly combining and conspiring to destroy the business of a competitor. Among other things, the defendants contended that electricity or electrical energy was not a "commodity" or a "raw product" or a "manufactured product," nor was it a "thing in general use" or "any article" or "product," as those terms are employed in the laws of Nebraska. The court said, with respect to the definition of "product" (118 Neb. 770, 226 N. W. 433):

" 'Product' is defined by authoritative lexicographers as 'a thing produced by nature or the natural processes; that which is produced by any action, operation or work; a production; the results; that which results from operation of a cause, consequence, or effect.' * * * Thus, in the language of everyday life and in the strictly commercial sense of the term, 'electricity' is 'produced,' 'stored,' 'measured,' 'bought and sold.' It is moved or transported from place to place in containers or by cable. It is something that one trades or deals in. We buy it and pay for it and determine the amount of our purchases by definite and well-understood 'standard.' Brought into being as a product, it exists in modern life as a commodity.

"The conclusion is that, as a matter of strict definition, 'electricity' in the commercial sense of the term is not only included within the literal terms of the statutes on which the state relies, but is plainly within the reason and spirit of the enactments * * *."

As to the nature of electricity, we find the following in 26 Am. Jur. (2d) Electricity, Gas, and Steam, § 1:

"So far as the law is concerned, electricity made by artificial means, or electric current, is property capable of ownership and of sale, and it may be the subject of larceny. With regard to the kind of property, electric current has been characterized as per-

sonal property, or a commodity, and it has been said that the owner thereof may use it as he will, subject only to the lawful exercise of the police power."

Thus, from any viewpoint, it would seem that electricity such as is involved in this case is a manufactured, marketable product which is clearly within the meaning of that term as used in § 272.02(11). The claim of appellant that petitioner is not engaged in producing a marketable product but is engaged in rendering a service is untenable on any theory. Inasmuch as we have held, and the great weight of authority supports us, that the production of electricity by mechanical means involves a manufacturing process, it is difficult to see how we could conclude that this process does not produce a product. Certainly the manufacturing process does not produce a service. We are convinced that the trial court was right and its decision must be affirmed.

Affirmed.