[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, United Illuminating Company, appeals a decision of the defendant Commissioner of Revenue Services (hereinafter Commissioner) assessing a sales tax on services rendered to three of plaintiff's electricity generating facilities in Bridgeport and New Haven.
The issue presented is whether plaintiff's property, as to which maintenance services were rendered, is "real property", within the meaning of Conn. Gen. Stats. 12-407
(2)(i)(I),[1] and so subject to sales tax, or whether plaintiff's property, as to which services were rendered, is "machinery" or "production equipment", within the meaning of Conn. Agencies Regulations 12-426-26(d)[2] and so not subject to sales tax.
On September 1, 1986 the Commissioner notified the plaintiff of an assessment of sales tax due in a specific amount; plaintiff petitioned for reassessment and paid the undisputed portion of the assessment. The amount of the assessed sales tax controverted in this appeal is $139,085.57 for the period January 1, 1983 through December 31, 1985, plus interest on that amount.
The facts are as follows: plaintiff is a public utility company which generates electricity for its customers in south central Connecticut. Its three plants in Bridgeport and New Haven consist of an integrated system of water pipes, steam ducts, boilers, pumps, heaters, baffles, condensers, turbines, generators, transformers, smokestacks, and assorted parts and connections. This system heats water to steam, brings the steam to suffer high temperatures, uses the heat energy to turn turbines, which uses mechanical energy to turn generators, which generate electricity. Transformers change the electricity from high current to high voltage, which is fed by transmission lines to plaintiff's customers.
The component parts of the system require periodic maintenance for which plaintiff paid third party contractors. The defendant Commissioner has assessed a sales tax upon the plaintiff's cost of those services, pursuant to General Statutes 12-407 (2)(i)(I), on the ground it is "services to industrial, . . . income-producing real property."
If the issue was whether or not the equipment maintained were fixtures according to Connecticut law, an inquiry would have to be made whether or not each component was attached to the realty and intended to be permanently so attached. Waterbury Petroleum Products, Inc. v. Canaan Oil Fuel Co.,193 Conn. 207, 215-16 (1984). However, 12-426-26(d) of Conn. Agencies Regulations, adopted by the Department of Revenue CT Page 1616 Services obviates such an inquiry. That section specifically excludes from the sales tax services rendered to machinery and production equipment, "even though such machinery or equipment is considered to be a fixture under Connecticut real property law."
That section of the Regulations defines "industrial property", as used in General Statutes 12-407(2)(i)(I), to mean an "industrial plant" within the meaning of Conn. Agencies Reg. 12-426-26(d), which defines "industrial plant" to mean "a manufacturing facility at which manufacturing production process is occurring. . . ." Conn. Agencies Reg. 12-426-11b(7) defines "manufacturing" to mean "the performance as a business of an integrated series of operations which places personal property in a form, composition, of character different from that in which it was acquired for sale in the regular course of business by the manufacturer. The change in form, composition, or character must be a substantial change, and it must result in a transformation of property into a different product having a distinctive name, nature and use."
The Commissioner contends that generation of electricity is not "manufacturing", and therefore the components of plaintiff's plant is to which maintenance services were rendered are not "industrial property" within the meaning of General Statutes 12-407 (2)(i)(I). He cites two Pennsylvania cases in support of his position. Commonwealth v. U.S. Electric Co., 7 Pa. Co. 90, 17 ALR3d 105, 344 (1990); Potomoc Edison Co. v. Commonwealth, 411 A.2d 1287 (1980 Pa.). On the other hand, the Minnesota Supreme Court has held that the "conversion of waterpower into electric current by the use of labor and machinery is essentially a manufacturing process." (Zamani v. Otter Tail Power Co., 182 Minn. 355, 234 N.W. 457
(1931)) and electricity is a "manufactured, marketable product." Minnesota Power Light Co. v. Personal Property Tax, Etc., 289 Minn. 64, 182 N.W.2d 675, 692 (1970). See also 17 ALR3d 7 44, 3 ALR4th 1129 4. This Court agrees with the Minnesota court.
It holds that plaintiff's plant is an industrial plant performing manufacturing production processes and it also holds that, except for the smokestacks, the component parts of the plaintiff's electricity generating system are machinery and production equipment, and maintenance services of them are not subject to the sales tax.
As for the smokestacks, the facts are that at the Bridgeport and one of the New Haven plants they are free-standing but the two stacks at the other New Haven plant sit on top of the plant building. All of them consist of CT Page 1617 concrete or steel exterior columns and brick inner flues and clearly are not portable. To that extent they have the characteristics of real property. They also produce drafts which are essential for operation of the boilers and disperse flue gases because of their height, over large areas. To that extent they are an integral part of the electrical generating system.
On balance and after reflection the Court concludes that by virtue of their structure and permanency, the smokestacks are more like real property than machinery and production equipment, so maintenance of them is taxable under General Statutes 12-407(2)(i)(I).
The parties have stipulated that of the $139,085.57 assessed by the Commissioner for unpaid sales tax, $9,735.99, plus an additional $963.86, for a total of $10,699.85, represents the tax on services rendered to the smokestacks.
The Court sustains the plaintiff's appeal to the extent of $128,385.72 of the sales tax assessed by the Commissioner, finding that amount not to be properly imposed upon the plaintiff, and overrules the plaintiff's appeal as to $10,699.85 of the tax assessed by the Commissioner, finding that amount to be properly owed by the plaintiff, plus interest at the statutory rate on the $10,699.85.
ROBERT SATTER, J.