**EMIL OLSON, INC., Relator,**

v.

**The COMMISSIONER OF REVENUE, Respondent.**

**No. 49763.**

Supreme Court of Minnesota.

May 9, 1980.

Christian, Slen, Savelkoul, Johnson, Broberg & Kohl and Henry J. Savelkoul, Albert Lea, for relator.

Warren Spannaus, Atty. Gen., Thomas K. Overton, Sp. Asst. Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

Gregory C. Olson, Afton, for Minnesota Asphalt Pavement Ass'n, Inc., amicus curiae.

Heard before SHERAN, C. J., and KELLY and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This appeal was commenced by a petition for a writ of certiorari to review the decision of a three-judge panel of the Minnesota Tax Court which concluded, *inter alia*, that relator Emil Olson, Inc., violated Minn. Stat. Ch. 297A (1978) by failing to charge and collect a sales tax on six particular transactions. We affirm.

Relator is a corporation engaged in the sand and gravel business. As part of its operation, relator excavates gravel in its virgin state, and then crushes, screens and sizes it for use by contractors in construction. Since the virgin rock varies in size from pebbles to pieces measuring 20 inches in diameter, the raw material is unsuitable for construction purposes. After relator has worked with the rock, however, the gravel is transformed into a uniform size of one inch in diameter and thus may be used in construction.

In the six transactions at issue here,[1] relator excavated virgin rock, crushed, screened, sized and stockpiled the gravel, which was then transferred to roadbuilding contractors for money consideration. The contractors used the gravel for the purpose of constructing an interstate highway. In all six cases, the virgin material was owned by a third party, other than relator or its customer. Either relator or the customer, or a combination of both, would pay the gravel pit owner for the virgin material removed.

For the six transactions in question, relator failed to charge or collect a sales tax upon transfer of the gravel to the contractor. The Tax Court concluded that these sales were subject to the sales tax imposed

by Minn.Stat. § 297A.02 (1978). Relator now challenges the Tax Court's ruling by way of certiorari. An amicus brief, supporting the position of relator, has been filed on behalf of the following organizations: Minnesota Asphalt Pavement Association, Inc.; Aggregate Ready-Mix of Minnesota Association, Inc.; and Concrete Paving Association of Minnesota, Inc.

This case presents the following questions for our determination:

(1) Does relator's transfer of crushed gravel to the contractors in question constitute a "sale" within the meaning of Minn. Stat. § 297A.01, subd. 3 (1978)?

(2) Is the sale of crushed gravel to a contractor for use in constructing an interstate highway exempt from sales tax under Minn.Stat. § 297A.25, subd. 1(h) (1978)?

1. A prerequisite to the imposition of the sales tax under Minn.Stat. § 297A.02 (1978) is that a "sale" must be involved. Relator argues that, in this case, it rendered a service to the contractors which does not qualify as a "sale" within the scope of Chapter 297A. We do not agree.

■ In those transactions where relator paid the gravel pit owner for the rock removed, the subsequent transfer by relator of the crushed gravel to the contractors for money consideration constitutes a "sale" under Minn.St. § 297A.01, subd. 3(a) (1978). That provision states that a "sale" takes place upon "[a]ny transfer of title or possession, or both, of tangible personal property, * * * for a consideration in money * * *."

■ As for the situations in which the contractors compensated the owner of the virgin material for the rock removed, § 297A.01, subd. 3(b) defines a "sale" as "[t]he production, fabrication, printing or *processing of tangible personal property* for a consideration *for consumers who furnish either directly or indirectly the materials used in the* production, fabrication, printing

---

1. Initially, ten transactions were at issue. The Tax Court held that four of these transactions were not subject to sales tax and the Commissioner of Revenue has not sought review of this determination.

or *processing*" (emphasis added). We believe that relator's modification of the virgin rock constitutes "processing of tangible personal property" within the meaning of the above statutory section. "Process" is defined in Webster's Third New International Dictionary, at 1808 (Unabridged 1966), as "to subject to a particular method, system, or technique of preparation, handling, or other treatment designed to effect a particular result." [2] Relator's activity of crushing, screening, and sizing virgin gravel clearly is a "method of preparation * * * to effect a particular result." Indeed, by utilizing a certain method, relator transforms the virgin material, which is unsuitable for construction purposes, into crushed gravel of uniform size so that it may be put to a particular commercial use.

This application of § 297A.01, subd. 3(b) is consistent with Sales and Use Tax Regulation 107, which states:

Producing, fabricating and processing include any operation which results in the creation or production of tangible personal property, or which is a step in a process or in a series of operations resulting in the creation or production of tangible personal property.

Application of labor to tangible personal property so that such property may continue to be used in the same form and for the purpose for which acquired represents repairs and does not constitute producing, fabricating or processing of property. *Where the expenditure is made for the purpose of modifying, altering or assembling it in some other manner, the application of labor thereto represents a sale under the provisions of Minn.Stat. § 297A.01, subd. 3(b).* (Emphasis added.)

Relator's transformation of the virgin material into a commercially usable state certainly amounts to an alteration as contemplated by this tax regulation.[3] Further, case law from other states supports the view that the crushing, screening and sizing of virgin rock is "processing of tangible personal property" under sale tax legislation.[4] *See, France Co. v. Evatt*, 143 Ohio St. 455, 55 N.E.2d 652 (1944); *Linwood Stone Products Co. v. State Dep't of Rev.*, 175 N.W.2d 393 (Iowa 1970). We therefore reject relator's contention.

■ Nor are we persuaded by the argument that the contractors who furnish relator with the material to be processed are not "consumers" within the scope of § 297A.01, subd. 3(b). It seems obvious that when the term "consumers" is used in this context it refers to the retail purchaser of the product in question. Since under Minn. Stat. § 297A.01, subd. 4 (1978) it is clear that the sales to the contractors involved in this case are "at retail,"[5] we necessarily

---

**2.** Similarly, Black's Law Dictionary, at 1084 (5th ed. 1979), states that "[p]rocess is mode, method or operation whereby a result is produced; and means to prepare for market or to convert into marketable form" (citation omitted).

**3.** This conclusion is supported by examples contained in Regulation 107 which are closely analogous to the instant case:

Example 3. Custom sawing of logs by a saw mill where logs are furnished by the customer constitutes a sale.
\* \* \* \* \* \*
Example 8. Cutting and milling charges by a lumberyard or woodworking shop, and pipe cutting or threading charges by a hardware store or plumbing shop are taxable whether the materials are supplied by the buyer or the seller.

**4.** In contrast, the decisions cited by relator and *amicus* lend little support to their position. The principal cases they rely upon, *Common-*

*wealth v. John T. Dyer Quarry Co.*, 250 Pa. 589, 95 A. 797 (1915), and *People ex rel. Tompkins Cove Stone Co. v. Saxe*, 176 App.Div. 1, 162 N.Y.S. 408 (1916), *affirmed* 221 N.Y. 601, 117 N.E. 1081 (1917), dealt with taxes on capital stock, and the term construed was "manufacturing," not "processing." The difference in the purpose of the tax and the term construed is material, and thus such decisions are inapplicable to the instant matter. *See, Cleveland-Cliffs Iron Co. v. Glander*, 145 Ohio St. 423, 62 N.E.2d 94 (1945).

**5.** Section 297A.01, subd. 4, provides that:

A "retail sale" or "sale at retail" means a sale for any purpose other than resale in the regular course of business. \* \* \* *Sales of building materials*, supplies and equipment *to* owners, *contractors*, subcontractors or builders for the erection of buildings or the alteration, repair or *improvement of real property are "retail sales" or "sales at retail"* in whatever quantity sold and whether or not for

conclude that the contractors are retail purchasers and thus consumers as contemplated by § 297A.01, subd. 3(b).

Based on the foregoing, we hold that the six transactions at issue in this case are "sales" within the meaning of Chapter 297A.

■ 2. Relator also argues that the subject transactions are excluded from the imposition of the sales tax pursuant to Minn. Stat. § 297A.25, subd. 1(h) (1978). That section exempts the following from sales tax:

> The gross receipts from the sale of and the storage, use, or consumption of all materials * * * used or consumed in * * * *industrial production of personal property intended to be sold ultimately at retail* * * *. Such production shall include,* but is not limited to, research, development, design or production of any tangible personal property, manufacturing, processing (other than by restaurants and consumers) of agricultural products whether vegetable or animal, commercial fishing, refining, smelting, reducing, brewing, distilling, printing, mining, quarrying, lumbering, generating electricity and *the production of road building materials.*

(Emphasis added.) This provision does not apply to the sales involved in this case. The exemption speaks in terms of "industrial production of personal property intended to be sold ultimately at retail * * * ." The crushed gravel transferred to the contractors by relator is not used to produce personal property to later be sold at retail, but rather, the product is used to improve real

property. Thus, the exemption is not available.[6]

This conclusion is in accordance with the purpose of subdivision 1(h). The exemption seeks "to avoid 'tax on tax' situations by postponing imposition of all sales taxes until the final sale of the finished product." *Commissioner of Revenue v. Safco Products Co.,* 266 N.W.2d 875, 877 (Minn.1978). *See also, Oster & Pederson, Inc. v. Commissioner of Taxation,* 266 N.W.2d 162 (Minn.1978). The sales at issue in this case are final in the sense that the product is not purchased for resale as personal property. Thus, this is not a situation in which subdivision 1(h) intends to exempt the transactions from the imposition of the sales tax.

■ Moreover, the § 297A.25, subd. 1(h), exemption is not applicable due to the operation of § 297A.25, subd. 4, which states that:

> Nothing herein shall exempt the gross receipts from sales of road building materials intended for use in state trunk highway or interstate highway construction, whether purchased by the state or its contractors.

Here, the contractors used the crushed gravel for the purpose of constructing an interstate highway and thus the above statute precludes the utilization of a § 297A.25 exemption which might otherwise be available.

In summary, we hold that the Tax Court was correct in concluding that the transactions in question were subject to the Chapter 297A sales tax. The claim of relator and *amicus* that such a holding may have

purpose of resale in the form of real property or otherwise.
(Emphasis added.) In this case, relator sold building materials in the form of crushed gravel to contractors who used the product to construct a roadbed, thereby improving real property. Therefore, relator's sales of crushed gravel to the contractors are "retail sales" as defined by § 297A.01, subd. 4.

6. It should be noted that one of the transactions in question was entered into in 1972, at which time subdivision 1(h) was worded a little differently. It then exempted from sales tax "[t]he gross receipts from the sale * * * of

all materials * * * used or consumed in * * * industrial production of personal property intended to be sold ultimately at retail * * *. *Such production shall include * * * road building.*" Minn.Stat. § 297A.25, subd. 1(h) (1971) (emphasis added). The Tax Court concluded that, due to the different wording in effect at the time of the 1972 transaction, the subdivision 1(h) exemption was applicable to that sale. However, as the Tax Court reasoned, the 1972 transaction would, in any event, be excepted from the exemption under § 297A.25, subd. 4. *See* discussion, text, *infra.*

an adverse impact on industry competition, because vertically integrated contractors would have a bidding advantage, is a concern shared by this court. However, modification of our sales tax policy is a legislative matter, and thus a proposed change in the statutory framework is more appropriately addressed to the legislature.

Affirmed.