**U.S. WEST MATERIAL RESOURCES, INC., Respondent,**

v.

**COMMISSIONER OF REVENUE, Relator.**

**No. C9–93–739.**

Supreme Court of Minnesota.

Jan. 21, 1994.

Hubert H. Humphrey, III, Atty. Gen., Craig R. Anderson, Sp. Asst. Atty. Gen., Tax Litigation Div., St. Paul, for relator.

Andrew E. Ottinger, Jr., Atty. Pro Hac Vice, U.S. West, Inc., Englewood, CO, for respondent.

TOMLJANOVICH, Justice.

Relator, Commissioner of Revenue, seeks review of a tax court order holding that respondent's cutting, on orders of a customer, of cable segments for use in the customer's business does not constitute "fabrication" or "processing" of the cable under Minn.Stat. § 297A.01, subd. 3(b) (1992), so that charges for this cable-cutting activity are not subject to the Minnesota sales tax. We reverse.

U.S. West Material Resources ("Resources") is a wholly-owned subsidiary of U.S. West, Inc. and operates a cable storage and cutting facility in New Brighton, Minnesota. A large number of storage reels, loaded with various types and sizes of cable, are stored in this facility. The cable loaded on these storage reels is "copper pair cable" used in telecommunications construction projects.[1] A typical storage reel is 7.5 feet tall and 4 feet wide, and depending on the thick-

---

1. A copper pair cable is an insulated cable made up of individually insulated copper wires. The individually insulated copper wires are paired within the cable by means of color coding on the wire's insulation; such a pair, when connected to the telephone network, constitutes a single telephone communications channel. Typical copper pair cables hold anywhere from 6 copper pairs to 3,000 copper pairs.

ness of the cable, holds between 800 and 12,000 feet of cable.

U.S. West Communications ("Communications"), another subsidiary of U.S. West, Inc., is the only customer of the Resources cable storage facility. Communications utilizes cable shipped from the Resources facility for use in telecommunications construction projects located in Minnesota, North Dakota, South Dakota, Iowa and Nebraska.

The cable stored in the Resources storage yard is sold to Communications on consignment by the manufacturers of the cable. The manufacturers deliver the cable to the storage yard and retain title to the cable until Resources, pursuant to an order from Communications, cuts a length of cable from a loaded storage reel. Resources cuts cable only as required to fulfill orders placed by Communications. A computer system located at Resources receives orders transmitted electronically by Communications that specify the type of cable (aerial vs. buried), the size of cable (number of copper pair), and the number of feet required. Typical orders request that lengths of cable running from 50 to 4,000 feet be cut from a loaded storage reel and transferred to a transport reel.

When cable is ordered, a cutting platform is moved to the appropriate storage reel located in the cutting shed. The ordered cable is unloaded from the appropriate storage reel and, as the length of cable removed is measured by a device located on the cutting platform, is contemporaneously reeled on a transport reel. When the requested length of cable has been unloaded from the storage reel and reeled on to the transport reel, the cable is cut. The severed cable, now reeled on to a transport reel, is then moved out of the cutting shed and readied for transport to Communications.

Upon cutting a length of cable from a loaded storage reel, Resources advises Communications through its computer system that the cut has been made, the requested cable has been loaded onto a transport reel, and the transport reel is ready for shipping. Resources charges Communications a "cable cut" fee each time Resources cuts cable pursuant to a Communications order.

On August 2, 1991, Commissioner issued a notice to Resources assessing additional Minnesota sales and use taxes of $61,519.77, plus interest. This assessment related to the tax period February 1, 1988 through December 31, 1990. The Commissioner assessed $54,739.59 of additional taxes based on Resources' "cable cut" charges, which totalled $912,326.88 during the tax period. Resources protested this portion of the assessment. On April 21, 1992, Commissioner issued a Notice of Determination on Appeal upholding the assessment.

Resources appealed to the tax court. The tax court granted Resources' motion for summary judgment and reversed the relevant portions of the Commissioner's August 2, 1991, and April 21, 1992 orders. The tax court held that the cutting of cable into smaller usable lengths does not constitute either "fabrication" or "processing" within the meaning of Minn.Stat. § 297A.01, subd. 3, and therefore the cutting of cable for a consideration was not a "sale" subject to the state sales tax. This appeal followed.

## I.

Minn.Stat. § 297A.02, subd. 1 (1992) imposes a tax on retail sales. Minn.Stat. § 297A.01, subd. 3 provides that a sale, for purposes of the tax, includes:

The production, fabrication, printing, or processing of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the production, fabrication, printing, or processing.

The sole question is whether Resources' cutting of cable segments for its customer Communications constitutes "processing" or "fabricating" of the cable within the meaning of Minn.Stat. § 297A.01, subd. 3.

In *Emil Olson, Inc. v. Commissioner of Revenue*, 293 N.W.2d 831 (1980), we defined "process" within the context of Minn.Stat. § 297A.01, subd. 3 generally as "to subject to a particular method, system, or technique of preparation, handling or other treatment designed to effect a particular result," citing Webster's Third New International Dictionary, at 1808 (Unabridged 1966). We held that where a corporation excavated, crushed,

screened and sized virgin rock, and stock-piled the resulting gravel, the corporation had "processed" the gravel within the meaning of section 297A.01. We concluded:

> Relator's activity of crushing, screening, and sizing virgin gravel clearly is a "method of preparation * * * to effect a particular result." Indeed, by utilizing a certain method, relator transforms the virgin material, which is unsuitable for construction purposes, into crushed gravel of uniform size so that it may be put to a particular commercial use.

Here, by cutting cable to size for use in telecommunications projects, Resources engaged in "a method of preparation * * * to effect a particular result." Resources, however, argues that the tax court correctly distinguished *Olson* on the grounds that Resources' cutting activity did nothing to change the inherent characteristics of the cable. Resources points out that the cable had the same "capacity," "insulation capabilities," and the "same use" in a telecommunications construction project after being cut as before.

Although we agree Resources' cable cutting left intact most physical characteristics of the cable, we hold that it did constitute "processing" within the meaning of Minn. Stat. § 297A.01, because (1) cutting the cable into customized segments made it more suitable for a particular commercial use, and (2) the Commissioner's administrative regulations establish that simply altering the size or length of a product is "processing" in this context.

By cutting large cable reels into customized smaller segments, Resources rendered the cable more suitable for use in specific telecommunications construction projects.

We believe the legislature, in making the sales tax applicable to consideration paid by a third party for processing, was concerned with taxing the enhancement in value resulting from an operation or series of operations upon tangible personal property. Resources received valuable consideration from its customer, Communications, for its cable cutting activity because this activity enhanced the commercial value of the cable.

If instead of paying Resources to cut cable segments, Communications had opted to buy cable segments cut to its specifications directly from the cable manufacturer, the cable's original selling price would undoubtedly have been higher, and the added consideration paid for the cable by Communications would have been subject to sales taxation. We do not believe this added consideration should be exempt from sales tax simply because Communications chose a third-party, rather than the manufacturer, to cut the cable.

Resources argues that the term "processing" requires the creation of a "new or changed product." We agree that a material may only be deemed to have been "processed" where some discernible modification has been made to it. We believe altering a material's length is a discernible modification.

This conclusion is consistent with the Commissioner's administrative rule, Minn.R. § 8130.0700 (1991).[2] The rule provides specific examples of activities constituting sales under Minn.Stat. § 297A.01. Among these, "[c]ustom sawing of logs by a saw mill," "[c]utting and milling charges by a lumberyard or woodworking shop" and "pipe cutting * * * charges by a hardware store or

---

2. A duly adopted administrative rule has the force and effect of law. *See* Minn.Stat. § 14.38 (1992); Minn.Stat. § 270.06. Although this court is not bound by an agency's interpretation of its governing statute, this court generally accords great weight to an agency construction of a statute. *Mammenga v. Department of Human Servs.*, 442 N.W.2d 786, 792 (1992).

Minn.R. 8130.0700 generally provides:
Subpart 1 * * * [F]abricating and processing include any operation which results in the creation or production of tangible personal prop-

erty, or which is a step in a process or in a series of operations resulting in the creation or production of tangible personal property.
Subp. 2. *Repairs.* Application of labor to tangible personal property so that such property may continue to be used in the same form and for the purpose for which acquired represents repairs and does not constitute producing, fabricating or processing of property. Where the expenditure is made for the purpose of modifying, altering or assembling it in some other manner, the application of labor thereto represents a sale * * *.

plumbing shop" for consideration all are specifically defined as sales.

No principled distinction can be made between pipe cutting or wood cutting, which are specifically defined as taxable activities by the administrative rules, and cable cutting. In each instance, most inherent physical characteristics of the product remain unaltered, but the product's size or shape is discernibly modified so as to make the product more commercially viable.

■ Accordingly, we conclude that Resources' cutting of cable to size for use in telecommunications projects for money consideration constitutes a "sale" within the meaning of Minn.Stat. § 297A.01, subd. 3(b).[3]

Reversed.

---

3. Because we hold that Resources' cable cutting constitutes processing under Minn.Stat. § 297A.01, subd. 3(b), we need not reach the question of whether cable cutting also constitutes "fabricating" within the meaning of the same provision. We note that the plain meaning of "fabricate" is narrower than that of "process." *See* Webster's Third New International Dictionary at 811 (unabridged 1976) (defining "fabricate" as "to form by art and labor," or "to form into a whole by uniting parts," i.e. "construct," "build").