ZIP SORT, INC., Relator,

v.

COMMISSIONER OF REVENUE, Respondent.

No. C0–96–1938.

Supreme Court of Minnesota.

July 24, 1997.

Kay Nord Hunt, Terrance W. Moore, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for Relator.

Barry R. Greller, Assistant Attorney General, Hubert H. Humphrey, III, Minn. Atty. General, Tax Litigation Division, St. Paul, for Respondent.

## OPINION

TOMLJANOVICH, Justice.

The relator, Zip Sort, Inc., filed claims for a refund of sales taxes imposed upon its purchase of two multi-line optical character readers ("character readers") and a bar code sorter. Minnesota law allows taxpayers to receive a refund of state and local sales taxes paid pursuant to the purchase of "capital equipment," which is defined in part as equipment that manufactures or' fabricates tangible personal property for· sale at retail. The Department of Revenue ("DOR") concluded that Zip Sort uses the character readers and the bar code sorter to provide a service and denied Zip Sort's claim. The appeals office of the DOR affirmed that decision and concluded that Zip Sort did not use either the character readers or the bar code sorter for the manufacture or fabrication of tangible personal property for retail sale and affirmed the denial of Zip Sort's claim. Zip Sort appealed to the tax court, which also denied both claims, but on more specific grounds. The tax court concluded that the

only tangible property at issue was the mail, and that Zip Sort did not sell the mail at retail. We, too, conclude that Zip Sort did not sell the mail at retail, but we determine that Zip Sort uses the character readers to manufacture bar codes, which are tangible personal property that is sold at retail to the United States Postal Service ("USPS"). In addition, we determine that Zip Sort does not use the bar code sorter to manufacture or fabricate tangible personal property for sale at retail. As a result we hold that the tax court erred in denying Zip Sort's refund claim for sales taxes paid upon the purchase of the two character readers, but that the tax court did not err in denying Zip Sort's refund claim for the sales taxes paid upon the purchase of the bar code sorter.

The case was tried on stipulated facts, which are as follows:

Zip Sort is a Minneapolis based corporation that is engaged in the business of receiving mail from third parties, reading addresses on the mail, applying scanable bar codes to the mail, and sorting the mail by zip code into bundles for which Zip Sort receives value-added refunds from the USPS. Between October 1, 1990 and December 31, 1992, Zip Sort purchased equipment and machinery for the expansion of its mail-related businesses. Zip Sort specifically purchased two character readers and one bar code sorter. Zip Sort paid $52,589.50 in Minnesota sales tax and $4,213.71 in Minneapolis sales tax on the two character readers. It also paid $10,387.47 in Minnesota sales tax and $817.61 in Minneapolis sales tax on the bar code sorter.

Zip Sort filed claims pursuant to Minnesota Statutes section 297A.15, subdivision 5, seeking a full refund of sales taxes paid on both of the character readers and the bar code sorter. The DOR on November 1, 1993 denied the claims and Zip Sort filed a protest on December 10, 1993. A DOR appeals officer on March 13, 1995 affirmed the denial on the grounds that Zip Sort did not primarily use the equipment in a trade or business of manufacturing tangible personal property for

sale at retail. Zip Sort on May 4, 1995 filed an appeal with the tax court, which ultimately determined on cross motions for summary judgment that the mail was not sold at retail, regardless of whether bar codes had been added.

Zip Sort operates its mail-related business as follows:

Zip Sort receives mail from persons who take advantage of its bar coding and sorting facility. It then places the mail on one of the two character readers. The character readers then scan the addresses on each piece of mail, and utilize information contained in software procured from the USPS to access the appropriate 11–digit code for each address. The character readers apply a bar code that contains the 11–digit number to each piece of mail and then scan the mail again for accuracy. Zip Sort then places the bar-coded mail on the bar code sorter for the purpose of sorting the mail to either the fifth or seventh digit.[1] After the bar code sorter sorts the mail, Zip Sort bundles the mail and delivers it to the USPS facility located on its premises. Upon receiving the envelopes or other mail containing the bar codes, the USPS can use machines to scan the bar codes and sort the individual pieces of mail to the 11th digit.[2] Without the bar codes, the USPS would have to sort the mail by hand.

Under USPS regulations, a person who provides mail with a proper bar code is eligible to receive value-added refunds payable by the USPS. The USPS has authorized Zip Sort to apply for and receive such refunds, which are payable in amounts of one cent or more per eligible piece of bar-coded mail. Zip Sort argues that it uses the two character readers and the one bar code sorter for fabricating or manufacturing bar codes for retail sale to the USPS. The Commissioner, on the other hand, argues that Zip Sort uses both types of equipment to provide a mailing service for those customers who pay to have their mail presorted.

1. The first five digits represent the zip code. The next two digits represent a more specific mail route.

2. The 11th digit represents a precise delivery point on a mail route that can be, for example, a house or an apartment.

## I.

■ This court reviews a grant of summary judgment de novo and will affirm only if the record shows that there is no genuine issue of material fact and the court below has not erred in its application of law. *Offerdahl v. University of Minn. Hosps. and Clinics,* 426 N.W.2d 425, 427 (Minn.1988). In reviewing questions of law posed by the tax court, this court has plenary power. *Morton Bldgs., Inc. v. Commissioner of Revenue,* 488 N.W.2d 254, 257 (Minn.1992). The application of law by the tax court to stipulated facts is a question of law and is, thus, reviewed de novo. *Id.*

Minnesota law allows a taxpayer to seek a refund of sales taxes paid upon the retail purchase of capital equipment. Minn.Stat. § 297A.15, subd. 5 (1996); *see also* Minn. Stat. § 297A.25, subd. 42 (1996) (exempting from sales tax the gross receipts from the sale of capital equipment). The sales tax statute defines capital equipment as "machinery and equipment and the materials and supplies necessary to construct or install the machinery or equipment." Minn.Stat. § 297A.01, subd. 16(a) (Supp.1993). To qualify under this definition, "the capital equipment must be used by the purchaser or lessee for manufacturing, fabricating, mining, quarrying, or refining tangible personal property * * * to be sold at retail." *Id.* To qualify for the tax exemption, therefore, Zip Sort must show that the purchased equipment is 1) used for the manufacturing, fabricating, mining, quarrying or refining 2) of tangible personal property[3] 3) to be sold at retail.[4] *Id.*

■ The tax court did not specifically address whether Zip Sort uses the equipment for the manufacturing, fabricating, mining,

quarrying or refining of tangible personal property, but instead denied the claim on the grounds that Zip Sort did not effect a "retail sale." The statutory definition of "sale" relied upon by the tax court is:

[t]he production, fabrication, printing, or processing of tangible personal property for a consideration for consumers who furnish either directly or indirectly the materials used in the production, fabrication, printing, or processing.

Minn.Stat. § 297A.01, subd. 3(b) (1996). We conclude, however, that the tax court's reliance upon Minnesota Statute section 297A.01, subdivision 3(b) was misplaced. Section 297A.01, subdivision 3 includes 11 nonexclusive[5] events within the statute's definition of "sale" or "purchase." Subdivision 3(b) is only one of those 11 nonexclusive events, and as we have twice made clear, the legislative purpose behind this portion of the subdivision was to impose a sales tax on the value of those activities that improve the particular pieces of tangible personal property to be sold or purchased. *U.S. West Material Resources, Inc. v. Commissioner of Revenue,* 511 N.W.2d 17, 20 (Minn.1994) (stating that process of cutting cable for a customer who ultimately purchased the improved cable qualified as a sale under section 297A.01); *Emil Olson, Inc. v. Commissioner of Revenue,* 293 N.W.2d 831, 834 (Minn.1980) (stating that process of crushing gravel for a customer who ultimately purchased the improved gravel qualified as a sale under section 297A.01). In *U.S. West,* we stated that:

the legislature, in making the sales tax applicable to consideration paid by a third party for processing, was concerned with taxing the enhancement in value resulting from an operation or series of operations

---

3. Prior to the 1993 amendments, Minnesota law required that "capital equipment must be used by the purchaser or lessee for manufacturing, fabricating, mining, quarrying, or refining a *product* to be sold at retail." Minn.Stat. § 297A.01, subd. 16 (1992) (emphasis added). Because we ultimately conclude that the character readers are capital equipment as defined in the amended statute, we need not address Zip Sort's argument that it would have been unconstitutional to use the amended statute to deny a tax refund for equipment purchased prior to the amendment.

4. The General Sales Tax and Distribution Statute defines "retail sale" or "sale at retail" as "a sale for any purpose other than resale in the regular course of business." Minn.Stat. § 297A.01, subd. 4 (1996).

5. "A 'sale' or 'purchase' includes, *but is not limited to,* each of the following transactions." Minn.Stat. § 297A.01, subd. 3 (1996) (emphasis added).

upon tangible personal property. [The taxpayer] received valuable consideration from its customer * * * for its cable cutting activity because this activity enhanced the commercial value of the cable.

511 N.W.2d at 20.

Zip Sort is correct in asserting that the placement of a bar code on mail makes it more suitable for a particular commercial use (namely machine sorting).[6] Zip Sort is mistaken to assert, however, that this fact alone qualifies the process of attaching a bar code to mail as a sale under section 297A.01, subdivision 3(b). The remainder of subdivision 3(b) requires that the process be performed for "consumers who furnish either directly or indirectly the materials used in the production, fabrication, printing or processing" of the tangible personal property to be sold. Minn.Stat. § 297A.01, subd. 3(b) (1996). As this court stated:

If instead of paying [the taxpayer] to cut cable segments, [the consumer] had opted to buy *cable segments* cut to its specifications directly from the cable manufacturer, the cable's original selling price would undoubtedly have been higher, and the added consideration paid for the cable by [the consumer] would have been subject to sales taxation. We do not believe this *added consideration* should be exempt from sales tax simply because [the consumer] chose a third-party, rather than the manufacturer, to cut the cable.

*U.S. West*, 511 N.W.2d at 20 (emphasis added). In other words, the legislature passed subdivision 3(b) for the purpose of taxing "the added consideration" paid by a consumer who furnishes the tangible personal property either directly or indirectly. In *Emil Olson*, we held that a consumer *directly* furnished tangible personal property by itself purchasing and receiving the property before transferring it to a third party for improvement. 293 N.W.2d at 834 (stating that contractors who furnish third parties with material to be processed are consumers). In the same case, we held that a consumer *indirectly* provided tangible personal property by "compensating the owner of the virgin material" simultaneous with the transfer of the material to a third party for improvement. *Id.* at 833–34. In one case, the consumer buys the tangible personal property and then personally transfers it to a third party for improvement. In the other case, the consumer effects a transfer by paying the original owner to deliver the tangible personal property to a third party for improvement. In both cases, the consumer must pay sales tax based upon the final price of the improved tangible personal property.

In the case at bar, the consumer is the USPS[7] and the improved tangible personal property is the mail with the bar code attached. Assuming arguendo that the process of placing the bar code on the mail qualifies as "fabrication," the fact remains that the consumer did not "furnish" the mail either directly or indirectly. Unlike the consumer in *U.S. West*, who indirectly furnished the unimproved cable to the relator by compensating the supplier of the cable without taking possession, and unlike the consumer in *Emil Olson*, who furnished the unimproved gravel to the relator both directly (by compensating the supplier of the unimproved gravel, taking possession and then delivering it directly to the relator for improvements) and indirectly (by compensating the supplier of the unimproved gravel without taking possession), the USPS never compensated the original "suppliers" of the mail. Instead, unrelated persons brought their mail to Zip Sort for the purpose of delivery. Zip Sort then "fabricated" the mail by placing a bar

---

**6.** Only those pieces of mail with an appropriate bar code can be sorted by machine. All other mail must be sorted by hand.

**7.** The Commissioner argues that Zip Sort's "actual customers are the persons who bring it mail to be grouped in volume, sorted, and bar coded and not the United States Postal Service, to which the presorted mail is later delivered." While it is true that those persons who bring mail to Zip Sort are "customers" in the generic

sense, the Commissioner fails to offer any support for the contention that this somehow disqualifies the USPS from being a "consumer" within section 297A.01, subdivision 3(b). In fact, this court concluded that all "retail purchasers" would be "consumers as contemplated by § 297A.01, subd. 3(b)." *Emil Olson*, 293 N.W.2d at 834–35. Consequently, the determinative question is whether the entity purchases "tangible personal property at retail sale."

code on it. The tax court, therefore, correctly concluded that the USPS's ultimate receipt of the improved mail did not qualify as a sale under section 297A.01, subdivision 3(b).

The tax court was mistaken to conclude, however, that the USPS did not make any purchase. For although the USPS did not pay Zip Sort any valuable consideration for the improved *mail*, it did pay Zip Sort valuable consideration for the *improvement*—in other words, the bar code. *See* Minn.Stat. § 297A.01, subd. 3(a) (1996) (defining sale to include "[a]ny transfer of title or possession, or both, of tangible personal property * * * for a consideration in money or by exchange or barter"). The dispositive questions, therefore, are 1) whether Zip Sort uses the equipment at issue to *manufacture, fabricate, mine, quarry or refine* bar codes; 2) whether the bar codes themselves are *tangible personal property*, and 3) whether the USPS purchases the bar codes in a *sale at retail.*

 Although much discussion in the tax court's opinion addressed the issue of whether the application of bar codes to pieces of mail constituted "fabrication" within the definition of *sale* included in section 297A.01, subdivision 3(b), the tax court did not address whether the equipment "manufactures" or "fabricates"[8] the bar codes themselves so as to fit within the definition of *capital equipment* included in section 297A.01, subd. 16(a) (Supp.1993). Despite this omission,[9] we conclude that the character readers do in fact "manufacture"[10] the bar codes. As Zip Sort stated in its brief:

> Zip Sort feeds mail, without a bar code, one envelope at a time, into [a character reader]. The [character reader] then reads the address on the envelope, reviews it for accuracy and attaches a bar code to the envelope.

It also seems apparent from the facts that the bar code sorter, which reads the newly attached bar codes and then "sorts" the mail, does not "manufacture" or "fabricate" the bar codes. If anything, the bar code sorter "uses" the bar codes to sort the mail. Consequently, the bar code sorter is not capital equipment, and neither the Commissioner nor the tax court erred in denying Zip Sort's

---

8. It is quite apparent that the equipment at issue does not mine, quarry or refine the bar codes.

9. It should be noted that Zip Sort's argument before the tax court specifically asserted only that its equipment "fabricates *mail* by making it machine sortable." As was discussed above, such an argument is without merit since the USPS neither furnished nor purchased the *mail*. Consequently, the Commissioner asserts that Zip Sort's specific argument that it actually manufactures a *bar code* that is tangible personal property to be sold at retail to the USPS is not properly before this court.

Appellate courts generally will not consider those issues raised for the first time on appeal. *Fingerhut Prod. Co. v. Commissioner of Revenue*, 258 N.W.2d 606, 608, n. 4 (Minn.1977) (refusing to decide issues not previously brought before the tax court). An exception to the general rule is that an appellate court may base its decision on a theory not presented to nor considered by the trial court where the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits and where there is no possible advantage or disadvantage to either party in not having had a prior ruling on the question by the trial court. *Holen v. Minneapolis–St. Paul Metro. Airports Comm'n*, 250 Minn. 130, 135, 84 N.W.2d 282, 286 (1957). This court also has held that there is no disadvantage to a party when the facts are undisputed.

*Harms v. Independent Sch. Dist. No. 300, LaCrescent*, 450 N.W.2d 571, 577 (Minn.1990). A conclusion by this court that the bar codes are in fact tangible personal property that are manufactured by the relator and subsequently sold at retail to the USPS would be decisive of the entire controversy on its merits. Furthermore, the facts are undisputed. A decision by this court, therefore, will not place either party at an advantage or disadvantage. *Harms*, 450 N.W.2d at 577.

10. The Commissioner argues that even if we find that Zip Sort "used" any of the machinery for the purpose of manufacturing the bar code, we still should deny the claim because the machinery was not used "substantially or primarily" to manufacture bar codes. Such an argument is without merit, however. That portion of the statute requiring that capital equipment be used "*primarily* for manufacturing, fabricating, mining or refining tangible personal property to be sold *ultimately* at retail," did not come into effect until after Zip Sort filed its claims. Act of May 5, 1994, Ch. 587, art. 2 §§ 2, 23, 1994 Minn. Laws 1067–70, 1080 (*codified at* Minn.Stat. § 297A.01, subd. 16(a) (1996)). Any argument that the "substantially" requirement for *replacement* equipment included in the older version of section 297A.01, subdivision 16(b)(1) somehow provided a "substantially" requirement for *new* equipment is unpersuasive.

claim for a refund of the sales taxes paid for the bar code sorter. Because we conclude that the character readers do in fact manufacture the bar codes, however, we cannot determine the correctness of the Commissioner's denial of Zip Sort's claim for a refund of the sales taxes paid for the two character readers until we determine whether the bar codes are tangible personal property that is sold at retail.

## II.

The statute defines tangible personal property as "corporeal personal property of any kind." Minn.Stat. § 297A.01, subd. 11 (1996). Blacks Law Dictionary defines "corporeal property" as "all things which may be perceived by any of the bodily senses * * * although a common definition of the word includes merely that which can be touched and seen." Black's Law Dictionary 343 (6th ed.1990). The question we must consider under the statute, therefore, is whether a bar code printed with ink directly on an envelope is that which can be touched and seen. Certainly a bar code can be seen, but can it be touched? That, of course, depends on the definition of touch. If touch means to put your finger on it, then yes, one can touch a bar code. But if touch means to feel, then perhaps one cannot touch a bar code, unless, of course the character readers apply bar codes using raised lettering.

As the above discussion makes clear, the statutory language is not all that helpful in determining whether the bar codes are tangible personal property. Thankfully, our determination of tangible personal property in *Fingerhut Prod. Co. v. Commissioner of Revenue*, 258 N.W.2d 606 (Minn.1977) provides a bit more help. In *Fingerhut*, we held that a list of addresses, in and of itself, was not tangible personal property. *Id.* at 609–10. Contrarily, we also held that addresses included on Cheshire tapes, gummed labels, and heat transfers were tangible personal property. *Id.* The difference between the two, we said, was that while the consumers used the *information* contained on the typed lists, the consumers did not use the typed *lists* themselves. In the case of the Cheshire tapes, gummed labels, and heat transfers, meanwhile, we concluded just the opposite.

Whereas the consumer in *Fingerhut* never actually used the typed lists, the consumer in *Fingerhut* actually used the Cheshire Tapes, gummed labels, and heat transfers. As we wrote, "the physical manifestation of the property is itself used[,] not merely the intangible information." *Id.* at 610.

In the case at bar, the Commissioner argues that the bar codes are more like the typed lists because they do not have an independent existence and physical presence apart from the envelopes to which they are applied. Zip Sort, on the other hand, argues that the bar codes are more like the Cheshire tapes, gummed labels and heat transfers because the bar code is a clearly visible and permanent physical manifestation of information that may be read by USPS's sorting machine. We conclude that Zip Sort's argument is more persuasive. A close reading of *Fingerhut* reveals that this court distinguished between mere information (the typed lists) and information contained on a medium that is itself used by the consumer. *Id.* at 610. In other words, if the medium in which the information resides is merely incidental to the reason for the purchase, the transferred information is intangible property. But if the medium in which the information resides is essential or necessary to the reason for purchase, then the transferred information is tangible property.

In the instant case, the consumer (or USPS) is paying for more than mere information when it gives Zip Sort a rebate for mail containing a bar code. This much becomes clear when one considers that the USPS would have access to the information upon which the bar codes are based by merely reading the addresses on the individual pieces of mail. The consumer, therefore, is paying for more than the *information* contained in the bar code, it is paying for a particular "form" of this information. Like the consumer in *Fingerhut*, who acquired more than mere addresses when it purchased the Cheshire tapes, gummed labels and heat transfers, the USPS acquires more than mere address information when it purchases the bar codes. Consequently, we hold that the bar codes are tangible personal property under the test employed in *Fingerhut*.

### III.

■ Having found that the character readers manufacture bar codes, which are tangible personal property, the final question before us is whether the transfer of those bar codes from Zip Sort to the USPS is a sale at retail. The statute defines sale to include "[a]ny transfer of title or possession, or both, of tangible personal property * * * for a consideration in money or by exchange or barter." Minn Stat. § 297A.01, subd. 3(a) (1996). The statute goes on to define retail sale as "a sale for any purpose other than resale in the regular course of business." Minn.Stat. § 297A.01, subd. 4 (1996). It is undisputed that Zip Sort receives value-added refunds in the form of cash from the USPS in exchange for mail with bar codes attached. In addition, it is undisputed that the USPS does not resell the bar codes in the regular course of its business. Despite these undisputed facts, the Commissioner argues that the transfer does not fit within the statute's definition of retail sale because the USPS's value-added rebate is not a fee paid to Zip Sort for this activity, and because the mail is not intended to be resold. Neither the statute's plain language nor its purpose supports either contention, however. First, the statute does not preclude "rebates" from the form of "consideration" necessary to qualify as a sale, and second, the purpose of the statute is to grant a sales tax refund for equipment that produces tangible personal property to be sold at retail—that is, tangible personal property that is sold for "any purpose *other than resale.*" The Commissioner's contention that the bar codes do not fit within the statute's definition because the USPS does not resell them actually bolsters Zip Sort's position that the transfer of the bar codes is a sale at retail. As a result, we conclude that the transfer of the bar codes from Zip Sort to the USPS in exchange for value-added rebates is a sale within section 297A.01, subdivision 3(a) and a sale at retail within section 297A.01, subdivision 4. Consequently we hold that both the Commissioner and tax court erred in denying Zip Sort's application for a rebate of sales taxes paid upon the purchase of the two character readers.

Affirmed in part, reversed in part.

STRINGER, Justice, concurring in part and dissenting in part.

I do not believe that Zip Sort is entitled to recover the sales tax paid on the bar code sorter *or* the two character readers and I therefore dissent from the majority's holding that Zip Sort is entitled to a refund of the sales tax paid on the character readers used to print the bar codes.

Whether a transaction constitutes a sale of personal property for sales tax purposes is determined by objectively examining the essence of the arrangement. *Questar Data Systems, Inc. v. Commissioner of Revenue,* 549 N.W.2d 925, 928 (Minn.1996). The essence here was clearly not the manufacture of tangible property for retail sale, but the providing of a service: the pre-mailing preparation and sorting of mass mailed items.

Taxability turns on the applicability of Minn.Stat. § 297A.15, subd. 5 which provides for a refund of sales tax paid on "capital equipment"—defined as machinery or equipment used "for manufacturing, fabricating, mining, quarrying, or refining tangible personal property * * * to be sold at retail." Minn.Stat. § 297A.01, subd. 16(a) (Supp. 1993). Unless the use of the two character readers fits within this clear and unambiguous statutory exemption, the sales tax is due on their purchase.

Zip Sort, bearing the burden of proof as to the tax exempt status of the transaction, argued to the tax court that the character readers were acquired for the purpose of fabricating mail "for sale" at retail to the postal service—a dubious notion the tax court quite appropriately rejected with the observation that the mail is not "for sale" to the postal service. On appeal here, citing *Fingerhut Prod. Co. v. Commissioner of Revenue,* 258 N.W.2d 606 (Minn.1977), Zip Sort presented a new theory—that it was not the mail that was being fabricated but rather the "scanable bar codes," and that these, in turn, were being sold at retail to the postal service. While the shifting theories of tax exempt status might themselves suggest that the only fabrication here is Zip Sort's novel arguments, it is clear that there is no person-

al property sold at retail manufactured or fabricated by the character readers.

In *Fingerhut* we stated that "[t]he line of demarcation between the use of intangible property and the use of its intangible manifestation is not a clear one" and held that, while typed mailing lists do not constitute tangible personal property because only the information contained on the lists is of value, adhesive address labels were tangible personal property because they represented the information in a useable physical form. 258 N.W.2d at 610. But here the bar codes do not exist independent of the customer's envelopes on which they are imprinted—they have no separate value whatsoever, for they simply provide a mechanism for transferring the address of the mail recipient to a machine scanable form. The physical properties of the bar codes—the ink printed on the envelopes—"were merely incidental to the services performed," *Id.* at 609,—the labeling and bundling of mail for easier processing by the postal service. Thus, the essence of the transaction is starkly before us: the postal service was reducing its postage rate not to acquire some interest in the physical printing of ink on paper, but rather to reflect the labor saving service of having the mail prelabeled and sorted. This obviously is the rendering of a service, not the sale of personal property.

Finally, even assuming that the bar codes created by the character readers were tangible personal property, I fail to see how there was a "retail sale" conducted here. The postal service gives Zip Sort a value-added refund on mail that has been properly bar coded. If this is a retail sale, to what has the postal service taken title or possession? The answer is clear—nothing. I would affirm the lower courts' holdings that Zip Sort is not entitled to a refund on the sales tax paid on the purchase of its character readers as well as on the purchase of its bar code sorters.

GARDEBRING, Justice (dissenting in part, concurring in part).

I join in the dissent in part and concurrence in part of Justice Stringer.