**NORTHERN STATES POWER COMPANY, et al.,**
Relators,

v.

**COMMISSIONER OF REVENUE,**
Respondent.

No. C9–97–698.

Supreme Court of Minnesota.

Nov. 20, 1997.

Sue Ann Nelson, Steven G. Mahon, Tracy N. Smith, Doherty, Rumble & Butler, P.A., Minneapolis, for relators.

Hubert H. Humphrey III, Atty. Gen., Barry R. Greller, Asst. Atty. Gen., Tax Litigation Division, St. Paul, for respondent.

## OPINION

PAGE, Justice.

Northern States Power Company ("NSP") and United Power Association ("UPA") sepa-

rately purchased step-down, load tap, and line transformers between June 1, 1990, and March 31, 1994, for use in their business operations. Each paid the Minnesota sales tax on the transformers they purchased and then each filed for refunds of those taxes, claiming that the transformers are exempt from the sales tax as capital equipment under Minn.Stat. § 297A.25, subd. 42 (1992). The Commissioner of Revenue denied their refund claims, finding that none of the transformers qualified as exempt capital equipment under the statute. Both NSP and UPA filed separate notices of appeal to the Minnesota Tax Court. In each case, the tax court denied NSP's and UPA's motions for summary judgment and granted summary judgment to the commissioner, finding that the transformers were not capital equipment as defined in either the 1992 or 1993 statutory definitions. *See* Minn.Stat. § 297A.01, subd. 16. We reverse.

NSP is a Minnesota corporation doing business in Minnesota as a public utility. NSP produces and sells its electricity to retail and wholesale customers in Minnesota, North Dakota, and South Dakota. UPA is a rural electric cooperative engaged in the production of electricity to be sold at retail through member distribution cooperatives in Minnesota and Wisconsin. Both NSP and UPA purchased a number of step-down, load tap, and line transformers for use in the production of electricity.

According to NSP and UPA, the transformers in question are an integral part of the process of producing electricity because they transform the electricity leaving the power plant into a form usable by the ultimate consumer. The production process, simplified for purposes of this discussion, is as follows: At the power plant, generators convert raw material, usually water, coal, or nuclear fuel, into electrical energy. The electricity then passes through a step-up transformer located adjacent to the power plant that increases the voltage of the electricity exiting the power plant before it is transmitted to substations where step-down trans-

formers decrease the voltage.[1] Load tap transformers keep the voltage at constant levels during increased or decreased loads on the electrical power system. Finally, after the electricity leaves the substation, it passes through line transformers that reduce the voltage to levels usable by the ultimate consumer. NSP and UPA contend that the primary function of the transformers is *not* to *move or transport* electricity from point A to point B, but to further *process* the electricity *at* points A or B to complete the product sold at retail. NSP and UPA further contend that although it is feasible to conceive of a system without the use of multiple transformers, under the modern power system, these transformers are necessary to make electricity production safe, efficient, and economical.

Under Minn.Stat. § 297A.25, subd. 42 (1992), capital equipment is exempt from Minnesota's sales tax. When a company purchases capital equipment, it must first pay the sales tax and then apply to the Commissioner of Revenue for a refund. Minn.Stat. § 297A.15, subd. 5 (1992). Capital equipment is defined in Minn.Stat. § 297A.01, subd. 16 (1992), as equipment used for "manufacturing * * * a product to be sold at retail." The legislature amended this statute in 1993, defining capital equipment as equipment used for "manufacturing * * * tangible personal property, or for the generation of electricity or steam, to be sold at retail." Minn.Stat. § 297A.01, subd. 16(a) (Supp. 1993). Both NSP and UPA paid the sales taxes on the transformers and then filed for refunds of those taxes pursuant to Minn.Stat. § 297A.15, subd. 5. UPA filed one of its claims before the legislature amended the capital equipment definition in 1993. NSP and UPA filed all of the remaining claims after the 1993 statutory changes became effective.

The commissioner denied all of NSP's and UPA's refund claims, concluding that the transformers were not capital equipment. Both NSP and UPA appealed the denial.

---

**1.** Neither NSP nor UPA made any refund claims for step-up transformers in this case. Thus, the issue of whether step-up transformers are exempt capital equipment is not before the court in this

appeal, and our decision in this case should not be read as stating an opinion on the exempt status of such transformers.

The tax court affirmed the commissioner's denial of the refunds, concluding that the transformers are not used in the manufacturing of a product to be sold at retail under the 1992 definition of capital equipment, nor are they used in the generation of electricity under the 1993 definition. NSP and UPA together appealed to this court.

NSP and UPA argue that the transformers are exempt from the sales tax under both the 1992 and 1993 definitions of capital equipment. They contend that transformers are used in the manufacturing of electricity under the 1992 definition, and that the 1993 definition was only a clarification of the earlier statute. The commissioner agrees that the 1993 statute only clarified the 1992 definition. The commissioner argues, however, that the transformers are not used in the manufacturing or generation of electricity and therefore do not qualify under either statute. NSP and UPA argue further that exclusion of transformers from the exemption violates their rights to equal protection and uniformity of taxation, and finally that "in the event the 1993 definition is determined to be more restrictive than the 1992 definition, NSP and UPA are entitled to have their claims for refund reviewed under the 1992 definition." [2]

■ The issue here is ultimately one of statutory construction, a question of law. As such, this court has plenary power to review the tax court's decision. *Nagaraja v. Comm'r of Revenue*, 352 N.W.2d 373, 376 (Minn.1984). When this court interprets a statute, the words of the statute are to govern. Minn.Stat. § 645.08 (1996). When the words of a statute are "clear and free from all ambiguity," they should not be disregarded. Minn.Stat. § 645.16 (1996). Words are to be given their common and approved usage, except for technical words which are to be construed according to their special meaning. Minn.Stat. § 645.08(1) (1996).

■ In resolving the issues presented by this case, we first look to the capital equipment definition in effect in 1992 when UPA filed the first of the claimed refunds. The 1992 statute defined capital equipment as equipment used for "manufacturing * * * a product to be sold at retail." [3] Minn.Stat. § 297A.01, subd. 16 (1992). This court has determined that electricity is a manufactured product. *Minn. Power & Light Co. v. Personal Property Tax, Taxing Dist., City of Fraser, Sch. Dist. No. 695*, 289 Minn. 64, 75, 182 N.W.2d 685, 691 (1970) (concluding that electricity is a "manufactured, marketable product" under Minn.Stat. § 272.02(11)). Therefore, the question we must answer is whether the transformers are used to manufacture electricity.

■ The American Heritage Dictionary of the English Language defines "manufacture" as the making or processing of raw material into a "finished product." 1096 (3d ed.1992). For purposes of the capital equipment sales tax exemption, the Minnesota Department of Revenue has defined manufacturing as a process that ends when the completed state of the product is achieved. Sales Tax Fact Sheet 103 (Apr.1992). The commissioner, NSP, and UPA stipulated that the electricity exiting the NSP and UPA step-up transformers is not usable by their customers. In light of these definitions and the parties' stipulation, it is clear that electricity is not a "finished product" or in a "completed state" until it passes through the step-down, load tap, and line transformers. Moreover, the electricity is not ready to be "sold at retail" until it is in a form usable by the ultimate consumer. Therefore, we conclude that step-down, load tap, and line transformers are an integral part of the manufacturing process and, as such, are exempt capital equipment under the 1992 definition.

■ In 1993, the legislature amended the capital equipment definition. When the legislature changes a statute, the courts are

2. We understand this final argument to be a due process argument.

3. This statute applies to the production of any product that will eventually be sold at retail, even if it is sold initially at a wholesale level. The

legislature made this clear in 1994 when it amended the statute to apply to capital equipment used in the making of a product to be "sold *ultimately* at retail." Minn.Stat. § 297A.01, subd. 16(a) (1994) (emphasis added).

to presume that the legislature intends a change in the law unless it appears that the legislature only intended to clarify the earlier statute. *County of Washington* v. *Am. Fed'n of State, County and Mun. Employees, Council No. 91,* 262 N.W.2d 163, 168 & n. 5 (1978). Here, it appears that the legislature only intended the 1993 amendment to Minn. Stat. § 297A.01, subd. 16, to clarify the statute. The commissioner, NSP, and UPA all agree that the changes made in 1993 merely clarified the 1992 definition. Further, the Minnesota Department of Revenue's analysis of the change supports the notion that the legislature only meant to clarify and not to substantively change the 1992 definition. Analysis of S.F. 924 (H.F.1144), 78th Leg., at 2 (Mar. 18, 1993). This analysis stated that the change was only a "clarification of current policy," and as such, "there would be no revenue impact." *Id.* Indeed, when drafting the revised legislation, the legislature explicitly stated that it intended the change to be a clarification:

> The purpose of [the amendment] is to confirm and clarify the original intent of the legislature in enacting the exemption for capital equipment * * *. [It] does not create a new category of items that are subject to sales and use tax, nor does it exclude from exemption any machinery, equipment, or other items which were intended to be exempted as capital equipment, as defined in Minnesota Statutes, section 297A.01, subdivision 16.

S.F. No. 924, 78th Leg (Minn.1993).

Because we have concluded that step-down, load tap, and line transformers are exempt under the 1992 definition of capital equipment, and because the 1993 amendment was only a clarification of that definition,[4] the

transformers continue to be exempt capital equipment under the 1993 definition.[5]

Reversed.

ANDERSON, J., took no part.

---

4. This reading of the statute is further bolstered by the 1994 definition of capital equipment. In 1994, the legislature again amended the definition, this time defining capital equipment as equipment used for the "manufacturing * * * [of] tangible personal property to be sold ultimately at retail." Minn.Stat. § 297A.01, subd. 16(a) (1994). It then defined manufacturing to include "the generation of electricity or steam." *Id.,* subd. 16(d)(4).

5. Because we conclude that NSP's and UPA's step-down, load tap, and line transformers are exempt from Minnesota's sales tax under both the 1992 and 1993 definitions of capital equipment, we need not, and therefore do not, reach the constitutional issues raised by NSP and UPA.