**SPRINT SPECTRUM LP,**
**et al., Relators,**

**v.**

**COMMISSIONER OF REVENUE,**
**Respondent.**

**No. A03–954.**

Supreme Court of Minnesota.

April 1, 2004.

Fredrikson & Byron, P.A., Thomas R. Muck, # 75851, Minneapolis, MN, for Relators.

Mike Hatch, Attorney General, State of Minnesota, Barry R. Greller # 37667, Assistant Attorney General, St. Paul, MN, for Respondent.

## OPINION

GILBERT, Justice.

This is a tax case that involves a consolidated appeal of the Commissioner of Revenue's denial of requested refunds of sales tax paid on capital equipment purchases by three companies: Sprint Communications Company LP, Sprint Spectrum LP, and United Telephone Company of Minnesota (collectively "relators"). These companies argue that their purchases of equipment for their local exchange, wireless, and long distance services should qualify for sales tax exemption as "capital equipment" that is used in manufacturing "tangible personal property."

The parties agreed to stipulated facts. Relators operate in three different segments of the telecommunications business. United Telephone Company of Minnesota operates local exchange networks. Sprint Spectrum provides wireless phone services. Sprint Communications provides long distance telephone services. All three entities purchased equipment for use in their business and paid sales tax on the purchases.[1]

Relators' network equipment transforms a caller's voice or data to electronic form in order to convey it to the intended recipient. The sound wave is processed and converted into various forms. These forms include digital signals, analog signal waves, optical forms, light pulses, data streams, and electrical signals. The particular form is deconstructed to enable it to travel over distances and then reconstructed. It is then transformed from an electronic format into an electronic reproduction of the original voice or data input. Data streams undergo a similar transformation for high-speed transmission called "packet switching," which includes breaking the data streams into smaller fragments before routing to the receiver. To qualify for sales tax exemption as capital equipment, the equipment must be used to manufacture "tangible personal property * * * to be sold ultimately at retail." *See* Minn.Stat. § 297A.01, subd. 16(a) (2000); Minn.Stat. § 297A.01, subd. 16(d)(4) (2000). The statute at issue defined "tangible personal property" as "corporeal personal property of any kind whatsoever * * *." Minn.Stat. § 297A.01, subd. 11 (2000).

Relators' product is taxed and sold at retail. To access the three different networks, customers pay fees. The fees are taxable per Minn.Stat. § 297A.01, subd. 3(f) (2000), defining as taxable sales and purchases of various telephone services. Relators' customers have paid $53,921,415 in sales taxes during the relevant period

---

1. The capital equipment utilized includes distribution frames, switches, transmission interface equipment, wires, cables, power generators, transceivers, controllers, communications links, scanning receivers, antenna assemblies, system databases, data storage and retrieval computers, backup power supplies, radio-frequency combiners, and "switch complexes" which include tandem switches, long distance switches, core switches, and digital multiplex system switches.

on purchases from the businesses that use the equipment at issue. These taxes are not in contention.

During the relevant dates, September 1996—July 2000, relators purchased large amounts of equipment for inclusion in their local exchange, wireless, and long distance telecommunications networks. Relators paid sales tax of approximately $9 million on the purchases and incorporated the equipment into their various communications systems. The parties agreed that the sales tax paid would be subject to verification by the Commissioner of Revenue if we determine that the exemption applies. Relators seek a tax·refund for taxes paid on these purchases.

The tax court affirmed the denial of relators' refund claims. Relying on a previous tax court decision, *Qwest Corp. v. Comm'r of Rev.*, Nos. 7214–R and 7283–R, 2001 WL 355861 (Minn. T.C. Apr. 2, 2001), *aff'd by an evenly divided court*, 640 N.W.2d 351 (Minn.2002), the tax court noted that "the common definition of 'corporeal' 'does not include a product that can only be heard and not touched or seen.'" *Sprint Spectrum LP, et al. v. Comm'r of Rev.*, Nos. 7299–R, 7308–R and 7309–R, 2003 WL 21246600 at *5 (Minn. T.C. May 23, 2003) (quoting *Qwest*, 2001 WL 355861 at *3).[2] Based on this definition of corporeal, the tax court held that relators' equipment does not manufacture tangible personal property as defined in Minn.Stat. § 297A.01, subd. 11, and therefore the equipment is not exempt from sales tax as capital equipment under Minn.Stat. § 297A.25, subd. 42. *Sprint*, 2003 WL 21246600 at *5, 6. We reverse.

## I.

In the current matter, no material facts are in dispute. The sole issue is whether the tax court properly applied the law to the stipulated set of facts. On an appeal from summary judgment, when the facts are stipulated, we review de novo whether the lower court erred in its application of the law. *Burlington N. R.R. Co. v. Comm'r of Rev.*, 606 N.W.2d 54, 57 (Minn.2000); *Amoco Corp. v. Comm'r of Rev.*, 658 N.W.2d 859, 871 (Minn.2003). When interpreting an exemption to general taxation, the exemption provision is to be strictly construed. *Camping & Educ. Found. v. State*, 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969). The party seeking an exemption has the burden of proof to establish entitlement to the exemption. *Id.* When a statute is ambiguous, we may look toward legislative intent to assist us in our interpretation. *See* Minn.Stat. § 645.16 (2002). Before doing that though, we will review the history of this dispute and discuss the product at issue.

Minnesota imposes sales tax on "the gross receipts from sales at retail made by any person in this state." Minn.Stat. § 297A.02, subd. 1 (2000). Minnesota imposes use tax "[f]or the privilege of using, storing, distributing, or consuming in Minnesota tangible personal property or taxable services purchased for use, storage, distribution, or consumption in this state * * *" unless sales tax was paid on the sales price. Minn.Stat. § 297A.14, subd. 1 (2000). However, receipts from the sale, storage, use, or consumption of "capital equipment," as defined in Minn. Stat. § 297A.01, subd. 16(a) (2000), are exempt from sales and use tax. Minn. Stat. § 297A.25, subd. 42 (2000).

In 1984, the Minnesota Legislature enacted a 2% lower sales tax exemption for

---

**2.** The tax court described *Sprint's* position as essentially "disagree[ing] with the definition of tangible personal property in *Qwest* and request[ing] that we redefine the term." *Sprint*, 2003 WL 21246600 at *4.

capital equipment to stimulate economic activity in Minnesota. This exemption was expanded to a full tax exemption in 1989. Act of October 3, 1989, ch. 1, art. 12, § 7, 1990 Minn. Laws 201, 206–07. Receipts "from the sale of and storage, use, or consumption of capital equipment" are exempt from sales and use tax. Minn.Stat. § 297A.25, subd. 42 (2000). Per Minn. Stat. § 297A.01, subd. 16(a) (2000):

> Capital equipment means machinery and equipment purchased or leased for use in this state and used by the purchaser or lessee primarily for manufacturing, fabricating, mining, or refining *tangible personal property* to be sold ultimately at retail and for electronically transmitting results retrieved by a customer of an on-line computerized data retrieval system * * *.

(emphasis added). "Tangible personal property" is defined as "corporeal personal property of any kind whatsoever, including property which is to become real property as a result of incorporation, attachment, or installation following its acquisition." Minn. Stat. § 297A.01, subd. 11 (2000).[3]

In 1993, the legislature amended the statute to insert "tangible personal property" in place of "a product." Act of May 24, 1993, ch. 375, art. 9, § 25, subd. 16, 1993 Minn. Laws 2728, 2897 (codified as amended at Minn.Stat. § 297A.01, subd. 16(a) (Supp.1993)). In 1994, the statute was amended again to update the language of subdivision 16(a), but left "tangible personal property" intact. Act of May 5, 1994, ch. 587, art. 2, § 2, 1994 Minn. Laws 1043, 1067–68 (codified as amended at Minn. Stat. § 297A.01, subd. 16(a) (2000)). Before the 1993 amendment, capital equipment was statutorily defined as follows:

> Capital equipment means machinery and equipment and the materials and supplies necessary to construct or install the machinery or equipment * * * used by the purchaser or lessee for manufacturing, fabricating, mining, quarrying, or refining *a product* to be sold at retail and must be used for the establishment of a new or the physical expansion of an existing manufacturing, fabricating, mining, quarrying, or refining facility in the state.

Minn.Stat. § 297A.01, subd. 16 (1992) (emphasis added). Following the 1993 amendment, and prior to the 1994 amendment, the statute read:

> Capital equipment means machinery and equipment and the materials and supplies necessary to construct or install the machinery or equipment * * * used by the purchaser or lessee for manufacturing, fabricating, mining, quarrying, or refining *tangible personal property,* for electronically transmitting results retrieved by a customer of an on-line computerized data retrieval system, or for the generation of electricity or steam, to be sold at retail and must be used for the establishment of a new or the physical expansion of an existing manufacturing, fabricating, quarrying, or refining facility in the state.

Minn.Stat. § 297A.01, subd. 16(a) (Supp. 1993) (emphasis added).[4]

---

**3.** This subdivision was amended in 1997 to include prepaid telephone cards as tangible personal property. Act of June 2, 1997, ch. 231, art. 7 § 7, 1997 Minn. Laws 2394, 2530 (effective for purchases, sales, storage, use, or consumption occurring after June 30, 1997) (codified as amended at Minn.Stat. § 297A.01, subd. 11 (Supp.1997)). The language of this subdivision was further amend-

ed in 1998 to define "prepaid telephone calling card." Act of Mar. 18, 1998, ch. 300, art. 2, § 3, 1998 Minn. Laws 344, 356 (effective for sales or purchases made on or after July 1, 1997) (codified at Minn.Stat. § 297A.01, subd. 11 (2000)).

**4.** Although not direct authority to the current matter, it should be noted that recently the legislature amended the tax exemption, effec-

In *Northern States Power Co. v. Comm'r of Rev.*, 571 N.W.2d 573, 575 (Minn.1997) ("*NSP*"), we reviewed a question of whether electric transformers performed a manufacturing function that would qualify for tax exemption. We utilized legislative history to interpret the purpose of the 1993 amendment, noting:

> The purpose of [the amendment] is to confirm and clarify the original intent of the legislature in enacting the exemption for capital equipment * * *. [It] does not create a new category of items that are subject to sales and use tax, nor does it exclude from exemption any machinery, equipment, or other items which were intended to be exempted as capital equipment, as defined in Minnesota Statutes, section 297A.01, subdivision 16.

*NSP*, 571 N.W.2d at 576 (brackets and ellipsis in original, quoting S.F. No. 924, 78th Leg. (Minn.1993)).

In *Qwest*, the tax court departed from our interpretation of the 1993 amendment, finding that the amendment "narrowed" the tax exemption. 2001 WL 355861 at *3. It noted that, under the pre–1993 statutory definition of capital equipment, telecommunications equipment would be exempt and that the services provided "would constitute a 'product.'" *Id.* at *2. However, by changing the term "product" to "tangible personal property," the tax court reasoned that the 1993 statutory amendment narrowed the definition of capital equipment by requiring that it manufacture a product that can be touched or seen and not only heard. *Id.* at *3. Further, the tax court pointed out that a second change to the capital equipment exemption added language that specifically exempted "electronically transmitting results retrieved by a customer of an on line computerized data retrieval system." *Qwest*, 2001 WL 355861 at *3 (quoting Minn.Stat. § 297A.01, subd. 16(a)). This language, the tax court stated, showed that "[i]f the [l]egislature did not intend the 1993[a]mendments to narrow the scope of the capital equipment exemption * * *, this additional language would be superfluous and without meaning." *Qwest*, 2001 WL 355861, at *3. Since Black's Law Dictionary ("*Black's*") defines tangible property as "that which may be felt or touched[,] and is necessarily corporeal," Black's Law Dictionary 1456 (6th ed.1990), the tax court found that the new version of Minn.Stat. § 297A.01 did not

---

tive for sales on or after January 1, 2004. According to Minn.Stat. § 297A.61, subd. 10 (Supp.2003) (emphasis added):

> **Tangible Personal Property.** (a) "Tangible personal property" means personal property that can be seen, weighed, measured, felt, or touched, *or that is in any other manner perceptible to the senses*. "Tangible personal property" includes, but is not limited to, electricity, water, gas, steam, prewritten computer software, and prepaid calling cards.
> (b) Tangible personal property does not include:
> (1) large ponderous machinery and equipment used in a business or production activity which at common law would be considered to be real property;
> (2) property which is subject to an ad valorem property tax;

(3) property described in section 272.02, subdivision 9, clauses (a) to (d); and
(4) property described in section 272.03, subdivision 2, clauses (3) and (5).

Act of May 25, 2003, ch. 127, art. 1, § 10, 2003 Minn. Laws 731, 740–41.

Effective after the relevant dates in the present matter, the legislature further added a specific exemption for "Telecommunications equipment:"

> (a) Telecommunications machinery and equipment purchased or leased for use directly by a telecommunications service provider primarily in the provision of telecommunications services that are ultimately to be sold at retail are exempt, regardless of whether purchased by the owner, a contractor, or a subcontractor.

Minn.Stat. § 297A.68, subd. 35 (2002).

exempt phone equipment because the services they provide did not meet any of the definitions of "tangible personal property." *Qwest*, 2001 WL 355861, at *7.

The *Qwest* tax court directly contradicted our holding in *NSP*. In *NSP*, we noted that the purpose of the 1993 amendment was to " 'confirm and clarify the original intent of the legislature in enacting the exemption for capital equipment.' " *NSP*, 571 N.W.2d at 576 (quoting S.F. No. 924, 78th Leg. (Minn.1993)). In the present matter, the tax court did not mention our interpretation of this statutory scheme in *NSP*. Rather, it relied on its own nonbinding precedent in *Qwest*. *See Sprint*, 2003 WL 21246600 at *4–6. In the process, the tax court narrowed the requirements for exemption and required a tax on items that the statute intended to be exempted as capital equipment.

In further support of its decision, the tax court in *Qwest* distinguished a previous tax court decision, *Minnesota RSA 10 Ltd. P'ship v. Comm'r of Rev.*, No. 6481, 1997 WL 410997 (Minn. T.C. July 18, 1997), *aff'd by an equally divided court*, 581 N.W.2d 36 (Minn.1998) ("*RSA 10* "), that had found telephone equipment to qualify for exemption based on the statute prior to the 1993 amendment. In *RSA 10*, the tax court held that the purchase of cellular telephone system equipment was exempt from sales and use tax. 1997 WL 410997 at *3. It found that telecommunications equipment does not merely deliver communications, but also "creates the signal required to transmit voice or data." *Id.* The tax court further reasoned that the cellular company "manufactures [c]ellular [c]ommunications as that term is commonly understood when it uses radio frequencies, computers (machines) and electronics to transmit and create a product." *Id.* The tax court, however, relied on the former version of the statute, which defined ex-

empt capital equipment as "equipment * * * used * * * for manufacturing * * * a product to be sold at retail." *Id.* at *2 (citing Minn.Stat. § 297A.01, subd. 16 (1992)) (emphasis added). The tax court in *RSA 10* concluded that the equipment was used for manufacturing a product to be sold at retail. *Id.* at *2–3. The tax court in *Qwest* refused to rely on *RSA 10*, reasoning that the 1993 amendments narrowed the definition of product (by inserting "tangible") and therefore cancelled any tax exemption for the relevant telephone equipment. *Qwest*, 2001 WL 355861 at *3.

The current question therefore revolves around whether relators' equipment can be defined as "capital equipment" per Minn. Stat. § 297A.01 to be exempt from sales tax. If the equipment that relators purchased was used by relators primarily for "manufacturing * * * tangible personal property to be sold ultimately at retail," Minn.Stat. § 297A.01, subd. 16(a) (2000), it will be classified as capital equipment exempt from sales and use tax. In answering this question, we look to the language of the statute, legislative history and our precedents for guidance.

Two of our prior decisions deal with the concept of tangible personal property and offer some guidance in our analysis. In *Fingerhut Products Co. v. Comm'r of Rev.*, 258 N.W.2d 606, 610 (Minn.1977), the revenue commissioner found that mail order business owners were liable for additional use taxes assessed against the value of various mailing lists used in their business, per Minn.Stat. § 297A.14 (1969). For the relevant period, section 297A.14 required a use tax for "the privilege of using, storing or consuming in Minnesota tangible personal property." *Fingerhut*, 258 N.W.2d at 608 (quoting Minn.Stat. § 297A.14 (1969)). In essence, if the mailing lists were tangible personal property, they were taxable. If they were classified as a

service, they were not taxable. We held that a list of addresses, in and of itself, was not tangible personal property, but that the addresses included on Cheshire tapes, gummed labels, and heat transfers were tangible personal property. *Fingerhut*, 258 N.W.2d at 610. While consumers did not use the typed lists themselves, they did use the Cheshire tapes, gummed labels, and heat transfers, which were the "physical manifestation of the property * * * not merely the intangible information." *Id.*

In *Zip Sort, Inc. v. Comm'r of Rev.*, 567 N.W.2d 34, 40 (Minn.1997), we considered whether bar codes on envelopes could be classified as tangible personal property. We noted that *Black's* has defined "corporeal property" as "all things which may be perceived by any of the bodily senses ... although a common definition of the word includes merely that which can be touched and seen." *Zip Sort*, 567 N.W.2d at 40 (quoting Black's Law Dictionary 343 (6th ed.1990)). After applying the *Fingerhut* test, we held that bar codes were tangible personal property because the bar code was a medium or format to which intangible information was presented that was essential, not merely incidental, to the reason for the purchase. *Zip Sort*, 567 N.W.2d at 40.

Relators assert that the tax court erred in deferring to *Black's* definition of "corporeal personal property." Instead, relators urge this court to rely on the common dictionary definition. Relators first point to Minn.Stat. § 645.08(1) which provides:

> words and phrases are construed according to rules of grammar and according to their *common and approved usage;* but technical words and phrases and such others as have acquired a special meaning or are defined in this chapter, are construed according to such special meaning or their definition;

Minn.Stat. § 645.08(1) (2002) (emphasis added). Relying on this statute, relators point to several common dictionary definitions of "corporeal," "material," "matter," "substance," "physical," and "incorporeal," none of which require that the physical substance be "touched or seen," as required by *Black's* definition of "corporeal" to which the tax court referred. Adopting regular dictionary definitions, relators argue, would be consistent with Minn.Stat. § 645.08(1).

Relators further point out that the 1999 edition of *Black's* revised the definition of "corporeal property" to "property that can be perceived." Terms such as "seen" or "handled" were eliminated from the newer edition. This change, relators argue, should cause relators' electronic impulses to be classified as corporeal and therefore tax exempt.

We have previously suggested that definitions of "corporeal property" can vary, noting *Black's* defines "corporeal property" as "all things which may be perceived by any of the bodily senses," but then states that a common definition of the word includes "merely that which can be touched and seen." *Zip Sort*, 567 N.W.2d at 40 (quoting Black's Law Dictionary 343 (6th ed.1990)). Although we referenced the sixth edition of *Black's* in *Zip Sort*, we relied on our *Fingerhut* decision to resolve the legal issue confronting us. *Zip Sort*, 567 N.W.2d at 40. As in *Zip Sort*, we do not wish to be restricted here in our analysis by any single dictionary definition. This is especially true where both the introductory portions of Minn.Stat. § 297A.01, subd. 11 and that dictionary edition start with a much broader definition: "corporeal personal property *of any kind whatsoever* * * *,*" Minn.Stat. § 297A.01, subd. 11 (emphasis added), and "*all things* which may be perceived by any of the bodily senses * * *." Black's Law

Dictionary 343 (6th ed.1990) (emphasis added). *Black's* gives one common approach as a mere example, but that does not necessarily exclude other common definitions. The tax court relied on *Qwest* and resorted to a portion of the sixth edition of *Black's* entry on "corporeal property" that utilizes a (now superseded) definition of corporeal that could have originated at the time of the Roman Empire. While dictionary definitions are sometimes helpful in statutory interpretations, it would expand the power of a dictionary's author for this court to rely solely on a portion of a specific dictionary text, or to overemphasize single words or examples within a specific dictionary entry.

We noted in *Zip Sort* that the statutory language is not all that helpful in determining whether certain products can be classified as tangible personal property to be ultimately sold at retail. 567 N.W.2d at 40. Instead, we looked to our precedent from *Fingerhut* and concluded that:

> [I]f the medium in which the information resides is merely incidental to the reason for the purchase, the transferred information is intangible property. But if the medium in which the information resides is essential or necessary to the reason for purchase, then the transferred information is tangible property.

*Zip Sort,* 567 N.W.2d at 40. Here, the customer is paying for more than mere information and is paying for the receipt of a particular form of that information, be it digital, optical, analog waves, light pulses, specific data streams, electric signals or facsimile. Regardless of the medium in which a phone call is being placed, electronic impulses have always been essential to telephone service, and thus essential or necessary to the reason of customers' communication and purchase.

We have previously determined that electricity is a manufactured product. *Minn. Power & Light Co. v. Pers. Prop. Tax, Taxing Dist., City of Fraser, Sch. Dist. No. 695,* 289 Minn. 64, 75, 182 N.W.2d 685, 691 (1970) (concluding that electricity is a "manufactured, marketable product" under Minn.Stat. § 272.02(11)). We have also found electrical transformers to be exempt, reasoning that the transformers are an integral part of the manufacturing process. *NSP,* 571 N.W.2d at 575. In *NSP,* we referenced the Minnesota Department of Revenue's definition of "manufacturing" as "a process that ends when the completed state of the product is achieved." *Id.* (citation omitted). Transformers are an essential component of the electrical manufacturing process as "it is clear that electricity is not a 'finished product' or in a 'completed state' until it passes through the step-down, load tap, and line transformers." *Id.* Similarly, as mentioned previously, the tax court has held that cellular communications are a product and the equipment used to manufacture cellular communications are exempt from sales and use tax. *RSA 10,* 1997 WL 410997 at *3. The tax court has further determined computerized legal research to be a product. *West Publ'g Co. v. Comm'r of Rev.,* No. 5346, 1990 WL 108040 at *2 (Minn. T.C. July 11, 1990), *aff'd without op.,* 464 N.W.2d 512 (Minn.1991).

In a similar manner, relators' telecommunications equipment manufactures a product by converting voice and other raw data into a form that can be conveyed, measured, sold, and is perceived by the senses. The matter is transformed, processed, refined, amplified, "packetized," routed, reconstructed, regenerated, and delivered into digital and optical forms in order to send sound waves, analog signals, and light pulses to the receiver. The form produced can be heard, seen, felt, and received by human senses under certain circumstances and can be precisely mea-

sured. As with electricity, telecommunications is corporeal personal property "of any kind whatsoever"[5] and includes all things which may be perceived by any of the bodily senses, including, but not limited to, touch, sight, hearing and, in this case, can be precisely measured, directed and delivered for use by a retail customer. Our traditional analysis and precedent would categorize this telecommunications equipment as refining or manufacturing a product "to be sold ultimately at retail." See, e.g., NSP, 571 N.W.2d at 576. As with all other capital equipment, this equipment is not consumed in the manufacturing or fabricating process. The businesses utilizing this equipment have already generated retail sales to relators' customers that have been taxed in the amount of $54,000,000 and this equipment will continue generating sales in the future.

In addition to looking at the language of the statute, we also consider the legislature's intent. The "object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2002); see also Peterson v. Haule, 304 Minn. 160, 169, 230 N.W.2d 51, 57 (1975). The legislature's intention may be ascertained by considering, among other matters, contemporaneous legislative history, the "object to be attained," the "circumstances under which it was enacted," and "the occasion and necessity for the law." Minn.Stat. § 645.16. In NSP, we quoted portions of the legislature's stated intent regarding its 1993 amendment of Minn.Stat. § 297A.01, subd. 16, from the senate file which speci-

fied that the amendment was to "confirm and clarify * * *, [it] does not create a new category of items that are subject to the sales and use tax * * *."[6] NSP, 571 N.W.2d at 576 (brackets in original, quoting S.F. No. 924, 78th Leg. (Minn.1993)). Respondent acknowledged in oral argument that the legislative history of the 1993 amendment does not reveal support for the notion that this telecommunications equipment was meant to be ineligible for tax exemption. We agree. As we noted in NSP, the legislature did not create a new category of items, such as telecommunications equipment, that would now be subject to the sales tax.

In Color–Ad Packaging, Inc. v. Comm'r of Rev., 428 N.W.2d 806 (Minn.1988), Justice Kelley, in his dissenting opinion, noted that the legislature enacted the tax exemption "to stimulate economic development and [the] resulting employment" by "provid[ing] an incentive to businesses to either locate or to remain in the state." Id. at 811 (Kelley, J. dissenting; joined by Yetka and Popovich, JJ.). In the past, both our court and the tax court have applied a modern and common sense approach to statutory definitions to classify newer forms of technology as a "product." See, e.g., Minn. Power & Light, 289 Minn. at 75, 182 N.W.2d at 691 (holding electricity is a product); West, 1990 WL 108040 at *2 (holding that computerized legal research is a product).

Communication equipment should be no exception. This equipment would have been exempt under the 1992 definition of capital equipment and, because the 1993

---

5. See Minn.Stat. § 297A.01, subd. 11 (2000).

6. The dissent "would adhere to our statement in NSP," but then would unilaterally adopt a contrary interpretation that would modify that holding to mean "the product must be tangible, that is, capable of being touched and seen, unless included in the express additional

categories added by the legislature." This result would not "confirm and clarify," but rather follow the tax court reasoning in Qwest, and contrary to our holding in NSP, would effectively narrow the range of capital equipment eligible for exemption.

amendment was only a clarification, the telecommunications equipment continues to be exempt capital equipment under the 1993 definition. *Cf. NSP*, 571 N.W.2d at 576. The statutory language suggests the legislature's intention to exempt capital equipment from sales tax pursuant to Minn.Stat. § 297A.25, subd. 42, and to reflect and embrace the major changes occurring in technology.

The initial definition of capital equipment used by the legislature is very embracing. It specifically "includes all machinery and equipment that is essential to the integrated production process." Minn. Stat. § 297A.01, subd. 16(b) (2000). The legislature has specifically included computers, software, and electronic or electrical devices within this category. *See* Minn.Stat. § 297A.01, subd. d(1) and (3) (2000). Furthermore, this type of telecommunications equipment is not specifically excluded for exemption as equipment used for non-productive purposes. *See* Minn. Stat. § 297A.01, subd. 16(c)(2) and (4) (2000). The telecommunications equipment at issue is essential to the purchaser's ongoing integrated production process.

Vast strides in technological advances have occurred in telecommunications. It appears that the legislature desired that Minnesota remain competitive with its neighboring states in these industries.[7] It is readily apparent the telecommunications industry is one that the legislature hoped to retain and expand in Minnesota by providing sales tax exemptions for significant capital investment that produces substantial sales at retail. Although modern telecommunications products may not always be "touched or seen" in the traditional sense, the legislative intent to encourage the investment in capital equipment in Minnesota is the same for each.[8]

Accordingly, we hold that the relators have met their burden of proof entitling them to the tax exemption. The capital equipment purchased for use in relators' business in Minnesota produces telecommunication products that are tangible personal property to be sold ultimately at retail.[9]

Reversed.

BLATZ, C.J., took no part in the consideration or decision of this case.

**7.** For general comparison purposes, a 1994 Minnesota governmental advisory council report notes that three surrounding states, Illinois, Wisconsin and North Dakota, impose neither a sales nor personal property tax on manufacturing capital equipment. *Capital Equipment Advisory Council Report to the Legislature* 19 (February 1994). Although this advisory report was prepared one year after the 1993 amendment, it reflects a general feeling towards the tax climate at the time and the desire in the region to maintain technological industries. North Dakota, for example, specifically exempts from taxes "[g]ross receipts from sales of computer and telecommunications equipment that is an integral part of a new primary sector business * * *." N.D. Cent.Code § 57–39.2–04.3 (Supp.2003). In addition, neighboring states have adopted broad definitions of the phrase "tangible personal property." Illinois courts, for example, have classified gaseous oxygen

as a tangible personal property for the purposes of a tax exemption. *Northwestern Steel & Wire Co. v. Dept. of Rev.*, 120 Ill.App.3d 461, 76 Ill.Dec. 29, 458 N.E.2d 168, 171 (1983).

**8.** The telecommunications product manufactured is actually measurable and may be perceived by a variety of bodily senses, including hearing, but also feeling through sound vibrations and, in some instances, the optical forms may even be seen. In the case of data, such as facsimiles, the final form product may be printed, and touched. The product is also sold at retail to the ultimate consumer.

**9.** In light of our conclusion that Sprint's equipment can be classified as "tangible personal property" under Minn.Stat. § 297A.01, subd. 16(a), we need not address Sprint's other arguments regarding exemption, and

ANDERSON, RUSSELL A., Justice (dissenting).

I respectfully dissent. I disagree with the broad definition that the majority applies to words within the tax exemption, Minn.Stat. § 297A.01, subd. 16(a) (2000) (current version at Minn.Stat. § 297A.68, subd. 5(a) (2002)). The majority ignores the common and approved use of language that we have previously applied to the relevant tax statute.

A few rules are well established when approaching questions of tax exemption and statutory interpretation. First, taxation is the general rule and exemption is an "exception in derogation of equal rights. Therefore, there is a presumption that all property is taxable. In consequence, the burden of proof is on the one seeking the exemption to establish that he is entitled to the exemption." *Camping & Educ. Found. v. State*, 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969) (citations omitted). Second, exemption provisions are to be strictly and narrowly construed. *Id.* Finally, words and phrases used in statutes are generally to be construed according to their common and approved usage. Minn. Stat. § 645.08(1) (2002). The majority's analysis and conclusions fail to adhere to these principles.

The key phrase of contention in the present matter is "tangible personal property," because to qualify for the capital equipment exemption, the equipment for which the exemption is sought must manufacture tangible personal property for sale at retail. Minn.Stat. § 297A.01, subd. 16(a) (2000). For the tax years at issue here, the legislature defined "tangible personal property" as "corporeal personal property of any kind whatsoever, including property which is to become real property

as a result of incorporation, attachment, or installation following its acquisition." Minn. Stat. § 297A.01, subd. 11 (2000) (current version at Minn.Stat. § 297A.61, subd. 10(a) (2002)). In concluding that the equipment at issue does not manufacture tangible personal property, the tax court adhered to its construction of the terms tangible personal property and corporeal personal property in an earlier case, *Qwest v. Comm'r of Rev.*, Nos. 7214–R, 7283–R, 2001 WL 355861 (Minn. T.C. Apr. 2, 2001), *aff'd by evenly divided court*, 640 N.W.2d 351 (Minn.2002), explaining: "This Court, referring to the 6th edition of Black's Law Dictionary, found that the common definition of 'corporeal' 'does not include a product that can only be heard and not touched or seen.'" *Sprint Spectrum LP v. Comm'r of Rev.*, Nos. 7299–R, 7308–R, 7309–R, 2003 WL 21246600 *5 (Minn. T.C. May 23, 2003) (quoting *Qwest*, 2001 WL 355861 at *3). The majority apparently rejects the tax court's reliance on the "common definition" of corporeal as stated in the 6th edition of Black's, explaining that it does not wish to be restricted by any single dictionary definition.

However, having rejected the definition employed by the tax court, the majority fails to expressly articulate an alternative meaning of either tangible or corporeal personal property. The majority ultimately states that:

> The telecommunications product produced here is actually measurable and may be perceived by a variety of bodily senses, including hearing, but also feeling through sound vibrations and, in some instances, the optical forms and light pulses may even be seen. In the case of data, such as facsimiles, the final form product produced may be printed, formatted, and touched.

consequently vacate the tax court's findings in this regard.

If this statement represents the majority's definition of corporeal property, it appears more aligned with the language of the 2003 legislative amendment that redefined tangible personal property than with the language of the applicable 1993 statute. *See* Act of May 25, 2003, ch. 127, art. 1, § 10, 2003 Minn. Laws 731, 741–42 (codified at Minn.Stat. § 297A.61, subd. 10(a) (Supp.2003)) (redefining tangible personal property, in relevant part, as: "personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses."). This amended statutory language is applicable, however, only to sales occurring on or after January 1, 2004. *Id.* Further, to the extent the majority notes that sound vibrations may be felt and that data transmissions can ultimately be printed and touched, it goes beyond the product of the equipment at issue here.

More crucial to the majority's analysis is its review of cases in which electricity, cellular telephone signals and computerized legal research were held to be "products" that qualified their producers for tax exemptions and its conclusion that Sprint's[1] equipment similarly manufactures a "product."

The majority finds the "product" cases relevant because prior to 1993 the statute defined exempt capital equipment as "equipment * * * used * * * for manufacturing * * * *a product* to be sold at retail." Minn.Stat. § 297A.01, subd. 16 (1992) (emphasis added). Although the legislature removed the "product" language when it amended the statute in 1993, the court apparently considers the prior language and cases applying it controlling because we stated in *Northern States Power Co. v. Comm'r of Rev.,* 571 N.W.2d 573, 576 (Minn.1997) ("*NSP* "), that the legislature intended the 1993

amendment only to clarify, not to change, the definition of capital equipment. I cannot join in this approach for several reasons.

First, the majority's rejection of the capable-of-being-touched-and-seen definition of tangible/corporeal property is misguided. While the majority eschews the tax court's reliance on the definition from the 6th edition of Black's, it fails to acknowledge the fact that in *Zip Sort, Inc. v. Comm'r of Rev.,* 567 N.W.2d 34 (Minn. 1997), this court relied on the very same definition of corporeal property as stated in that dictionary. Black's defined "corporeal property" as:

> Such as affects the senses, and may be seen and handled, as opposed to incorporeal property, which cannot be seen or handled, and exists only in contemplation. * * * In Roman law, the distinction between things corporeal and incorporeal rested on the sense of touch; tangible objects only were considered corporeal. In modern law, all things which may be perceived by any of the bodily senses are termed corporeal, although *a common definition of the word includes merely that which can be touched and seen.*

Black's Law Dictionary 343 (6th ed.1990) (emphasis added). In *Zip Sort,* we adopted the narrower, "common" definition, stating that "[t]he question we must consider under the statute, therefore, is whether a bar code printed with ink directly on an envelope is *that which can be touched and seen.*" *Zip Sort,* 567 N.W.2d at 40 (emphasis added). This approach was consistent with our principles of interpreting words used in statutes according to their common and approved usage, Minn.Stat. § 645.08(1), and that tax exemptions are to be construed narrowly,

---

1. Relators are collectively referred to herein as Sprint.

*Camping & Educ. Found.*, 282 Minn. at 250, 164 N.W.2d at 372. The majority not only abandons the precedent of *Zip Sort,* but in doing so it forsakes these established canons of statutory interpretation.

Moreover, the *Zip Sort* definition of corporeal property is not the only source from which a narrower definition properly flows. We cannot reasonably ignore the fact that in the phrase being defined, "tangible personal property," the crucial adjective "tangible" has a well-understood common meaning: "[c]apable of being touched and seen." Black's Law Dictionary 1456 (6th ed.1990).[2] The combination of these two adjectives used by the legislature, "corporeal" and "tangible," leads logically to the conclusion that the primary criterion the legislature intended to convey was that the property manufactured can be perceived by the sense of touch. This reinforces our adoption in *Zip Sort* of the narrower definition of corporeal property, that is, property that can be touched and seen.

In the end, the majority's analysis falls back on the previous version of the statute in which the crucial term was instead "product." As noted, prior to 1993, exempt capital equipment was defined in relevant part as "equipment * * * used * * * for manufacturing * * * *a product* to be sold at retail." Minn.Stat. § 297A.01, subd. 16 (emphasis added). In 1993, the legislature amended the definition of capital equipment, substituting new language for the word "product." The new definition of capital equipment was:

equipment * * * used * * * for manufacturing * * * *tangible personal property,* for electronically transmitting results retrieved by a customer of an online computerized data retrieval system, or for the generation of electricity or steam, to be sold at retail * * *.

Act of May 24, 1993, ch. 375, art. 9, § 25, 1993 Minn. Laws 2728, 2897 (emphasis added) (codified as amended at Minn.Stat. § 297A.01, subd. 16(a) (Supp.1993)). There is no question that the 1993 "tangible personal property" language, rather than the 1992 "product" language, applies to the refund claims in this case.[3]

In *NSP* we stated that the 1993 amendment was only for purposes of clarification and not, as is ordinarily presumed, intended to change the law. 571 N.W.2d at 576. In reliance on this statement, the majority concludes that because the legislature intended to clarify rather than to change the definition of capital equipment, the court's previous cases broadly construing "product" to include both tangible and intangible items are applicable to the definition of capital equipment in this case.

I disagree with the conclusion the majority reaches from our statement in *NSP*. In *NSP*, we were asked whether transformers purchased by a power company both before and after the 1993 amendment were exempt capital equipment. 571 N.W.2d at 574. First addressing the purchases to which the 1992 language applied, we noted that we had previously determined that electricity is a manufactured product, 571 N.W.2d at 575 (citing *Minn.*

2. Indeed, this common definition of tangible is found in non-legal dictionaries as well. *E.g., American Heritage College Dict.* 1385 (3d ed.1997) (defining tangible as "Discernible by the touch; palpable"); *Webster's Seventh New Collegiate Dict.* 901 (1971) ("capable of being perceived esp. by the sense of touch"); *Webster's Third New Int'l Dict.* 2337 (1976) ("capable of being touched: able to be perceived as materially existent esp. by the sense of touch: PALPABLE, TACTILE").

3. The definitions of "capital equipment," "tangible personal property" and "corporeal personal property" have been amended since 1993. Those changes do not apply to the claims at issue here.

*Power & Light Co. v. Pers. Prop. Tax, Taxing Dist., City of Fraser, Sch. Dist. No. 695*, 289 Minn. 64, 75, 182 N.W.2d 685, 691 (1970)). Thus, the issue was only whether the transformers performed a manufacturing function. *Id.* In that context, we analyzed the issue first under the statutory definition prior to the 1993 amendment and concluded that the transformers were "an integral part of the manufacturing process and, as such, are exempt capital equipment under the 1992 definition." *Id.* We then addressed the issue under the amended 1993 language. We noted the agreement of all parties that the 1993 legislation was merely a clarification of the 1992 definition of capital equipment. *Id.* at 576. We also quoted legislative history expressing that intent:

> The purpose of [the amendment] is to confirm and clarify the original intent of the legislature in enacting the exemption for capital equipment * * *. [It] does not create a new category of items that are subject to sales and use tax, nor does it exclude from exemption any machinery, equipment, or other items which were intended to be exempted as capital equipment, as defined in Minnesota Statutes, section 297A.01, subdivision 16.

*NSP*, 571 N.W.2d at 576 quoting S.F. No. 924, 78th Leg. (Minn.1993) (brackets in original). This quotation illustrates two things about the clarifying amendment. First, it addressed the original intent of the legislature, and second, it did not add or delete categories of taxable or exempt items.

That the legislature intended to confirm its original intent does not necessarily mean, however, that it was confirming the broad interpretation applied in the "product" cases relied on by the majority. Rather, the question remains what was the legislature's original intent in defining capital equipment. The amended language was intended to clarify that intent, so it is

appropriate to look at the clarifying language, rather than to ignore it. The majority essentially concludes that because the 1993 amendment did not change the meaning of capital equipment, the legislature intended that the new language, "tangible personal property," to mean the same as the old language, "product," as construed in the prior cases. But the interpretation of "product" in those cases included intangibles. It strains credulity to suggest that the legislature intended to confirm an original intent to include both tangible and intangible property by changing the wording to the more limiting phrase "tangible personal property." The more reasonable explanation is that the new language was intended to clarify that the original intent was to limit capital equipment to that which manufactures tangible personal property.

Indeed, in addition to changing "product" to "tangible personal property," the 1993 amendment also expressly added to the definition of exempt capital equipment used "for electronically transmitting results retrieved by a customer of an on-line computerized data retrieval system, or for the generation of electricity or steam." If tangible personal property was intended to include intangibles, as the majority's approach would mean, the legislature would have had no reason to expressly include the additional categories of on-line data transmission and generation of electricity. Indeed, those categories were likely included in the amended language because, as stated in the legislative history quoted above, in addition to clarifying its original narrow intent, the legislature did not want to delete any existing exempted categories. It therefore explicitly included two categories that had been construed by the courts as included in the previous definition. *See Minn. Power & Light Co. v. Pers. Prop. Tax, Taxing Dist., City of Fraser, Sch. Dist. No. 695*, 289 Minn. 64, 75, 182 N.W.2d 685, 691 (1970) (holding that elec-

tricity is a manufactured product); *West Publ. Co. v. Comm'r of Revenue*, No. 5346, 1990 WL 108040 (Minn. T.C. July 11, 1990), *aff'd without op.*, 464 N.W.2d 512 (Minn.1991) (holding that computerized legal research is a product).

Therefore, although I would adhere to our statement in *NSP* that the amendment was intended to clarify rather than to change the definition of capital equipment and did not change the categories of products that satisfy the exemption criterion, unlike the majority, I conclude that in clarifying its original intent, the legislature made clear that the product must be tangible, that is, capable of being touched and seen, unless included in the express additional categories added by the legislature. Indeed, had the legislature intended to specifically exempt telephone electronic pulses, it could have clearly expressed this intention, as it did with the related categories of on-line computer systems of the generation of electricity.

The majority seeks to further support its expansive reading of the exemption by reference to legislative intent, ultimately concluding that:

> It appears that the legislature desired that Minnesota remain competitive with its neighboring states in these industries. It is readily apparent the telecommunications industry is one that the legislature hoped to retain and expand in Minnesota by providing sales tax exemptions for significant capital investment that produces substantial sales at retail. Although modern telecommunications products may not always be "touched or seen" in the traditional sense, the legislative intent to encourage the investment in capital equipment in Minnesota is the same for each.

(Footnotes omitted.) Unfortunately, absent from the majority opinion is any reference to actual legislative action or history that supports these broad conclusions about the legislature's intent with regard to technology and the telecommunications industry. Instead, the majority relies only on a statement from a dissenting opinion about the general intent of the legislature to stimulate economic development and to provide incentives for businesses to relocate to or remain in the state—notably with no reference at all to technology or telecommunications. Next, the majority relies on decisions from this court and the tax court that recognized "newer forms of technology," electricity and computerized legal research, in particular, as a "product." But those decisions hardly constitute legislative action.[4]

Moreover, as discussed above, when the legislature chose to "clarify" its original intent with its 1993 amendments, rather than adopting expansive language that could easily have made clear an intent to

---

4. The majority cites a 1994 report which apparently notes that Illinois, Wisconsin and North Dakota did not impose a sales tax on manufacturing capital equipment as evidence that the legislature intended to remain competitive with neighboring states in the telecommunications industry. However, a 1994 report sheds no light on the intent of the legislature in the previous years relevant here. Moreover, currently each of those three states generally exempt manufacturing equipment from their sales tax only if it is used to produce "tangible personal property." 35 Ill. Comp. Stat. Ann. 120/2–5(14) (West Supp. 2003); N.D. Cent.Code § 57–39.2– 04.3(6)(b)(1) (Supp.2003); Wis. Stat. § 77.54(6)(a) (Supp.2001). Without knowing the meaning ascribed to that crucial phrase in those states in the years when the relevant Minnesota legislation was enacted, citation to the report tells us nothing about the competitive relationship among the states in this regard. For example, in Illinois, the supreme court held that the legislature intended tangible personal property to mean "[c]apable of being touched" and therefore electrical energy was not tangible personal property. *Farrand Coal Co. v. Halpin*, 10 Ill.2d 507, 140 N.E.2d 698, 700–01 (1957).

embrace newer technologies among the industries that would qualify for the exemption, the legislature redefined the exemption with the restrictive phrase "tangible personal property."[5] And most telling, the legislature also expressly included in the exemption electricity and computerized legal research. If the legislature thought that such new technologies were included within its "tangible personal property" definition, there would have been no need to specifically provide for electricity and computerized legal research. Alternatively, had it wished to broadly embrace new technology products, it could easily have used a more expansive definition as it did when it amended the definition of tangible personal property in 2003.[6]

Because a more narrow definition is consistent with the language employed by the legislature, the common usage of the terms tangible and corporeal, and our established principles regarding construction of tax exemption statutes, I would affirm the tax court's holding that the electronic pulses[7] produced by Sprint's equipment are not tangible personal property.

Even assuming, arguendo, that we should utilize the majority's reasoning and conclude that Sprint's electronic pulses are tangible personal property, the property must be sold ultimately at retail to qualify for exemption. In *Fingerhut Products Co. v. Commissioner of Revenue*, 258 N.W.2d 606, 609–10 (Minn.1977), and later in *Zip Sort*, we developed a test that dealt with circumstances in which intangible property, such as information, was transferred by means of tangible media and later sold at retail. Under this test:

> [I]f the medium in which the information resides is merely incidental to the reason for the purchase, the transferred information is intangible property. But if the medium in which the information resides is essential or necessary to the reason for purchase, then the transferred information is tangible property.

*Zip Sort*, 567 N.W.2d at 40. Unlike the majority, I would conclude that the electronic pulses produced by Sprint's equipment are a medium that is merely incidental to the reason for the purchase of telephone service.

Although the majority concludes that the *Fingerhut/Zip Sort* test should be construed to classify Sprint's product as tangible personal property that is ultimately sold at retail, a close reading of the test shows otherwise. In *Zip Sort*, we concluded that bar codes were tangible, because they were a medium by which intangible information was presented that was essen-

---

5. The majority notes its agreement with Sprint that the "legislative history of the 1993 amendment does not reveal support for the notion that this telecommunication equipment was meant to be ineligible for tax exemption." But the presumption is that all property is taxable, and consequently the burden is on the taxpayer to establish qualification for an exemption, *Camping & Educ. Found.*, 282 Minn. at 250, 164 N.W.2d at 372, not on the legislature to affirmatively state that property is ineligible for the exemption.

6. In 2003, the legislature broadened the definition of "tangible personal property." See pp. D–2—D–3, *infra*. In 2001, the legislature had amended the sales tax statute to expressly exempt telecommunications equip-

ment. Act of June 30, 2001, ch. 5, art. 12, § 54, 2001 Minn. Laws (1st Spec.Sess.) 1411, 1698–99 (codified at Minn.Stat. § 297A.68, subd. 35 (2002)). Obviously, when the legislature wanted to expand the scope of the exemption, it knew how to do so. I cannot help but note, regarding these expansions, our long-standing presumption that an amendment is intended to change the law. *See NSP*, 571 N.W.2d at 575–76.

7. The equipment at issue produces various types of signals that are used to transport the telephonic message, including electrical current, light pulses, and radio waves. For convenience, they are collectively referred to herein as electronic pulses.

tial to the purchase. 567 N.W.2d at 40. However, in *Fingerhut,* we found that typed mailing lists were merely incidental to the use of intangible information contained within the lists. 258 N.W.2d at 610.

Sprint's business revolves around selling communication, not selling electronic pulses. The electronic pulses are incidental to the overall purpose of the consumer purchase. The average consumer may not even be aware of how his message is transmitted from one phone to another, and would likely be equally satisfied if a future method is developed that did not rely on electronic pulses. Indeed, this is amply illustrated by evolution of the technology from land lines using electrical current, then optical fiber transmission, to the now ubiquitous wireless telephone that employs radio waves. The electronic pulses are not the essential medium that is purchased, but rather an incidental device to deliver communications. This makes Sprint's pulses more similar to the mailing lists in *Fingerhut.* In *Fingerhut,* the information on the mailing lists, not the lists themselves, was essential to the purchase. *Fingerhut,* 258 N.W.2d at 610. Similarly, it is the information delivered by Sprint's electronic pulses that is essential to the consumer, not the pulses themselves. Therefore, the product that Sprint sells at retail is the communication of the telephonic message, not the electronic pulses it uses to transmit that message. Accordingly, because those pulses are incidental to the product that is ultimately sold at retail, even if they were construed to be tangible personal property, the definition of capital equipment would not be satisfied.

For these reasons, I see no basis to adopt the majority's broad interpretation of the capital equipment tax exemption, and would narrowly construe the exemption, as we are required to do. Accordingly, I would affirm.

ANDERSON, PAUL H. (dissenting).

I join in the dissent of Justice Russell A. Anderson.