In re Cecil Ray BARTH and Deanna Joan Barth, Debtors.

Michael S. Dietz, Trustee, Plaintiff,

v.

Deanna Joan Barth and the Lower Sioux Indian Community in the State of Minnesota, Defendants.

In re Morris Jerome Pendleton, Sr., Debtor.

Paul W. Bucher, Trustee, Plaintiff,

v.

Morris Jerome Pendleton, Sr., and the Lower Sioux Indian Community in the State of Minnesota, Defendants.

In re Linda Rose Whitaker, Debtor.

Paul W. Bucher, Trustee, Plaintiff,

v.

Linda Rose Whitaker and the Lower Sioux Indian Community in the State of Minnesota, Defendants.

Bankruptcy Nos. 09–36006, 10–34267, 10–38674.
Adversary Nos. 11–03233, 11–03234, 11–03235.

United States Bankruptcy Court,
D. Minnesota.

Feb. 11, 2013.

920

Christopher D. Nelson, John C. Beatty, Scott Hoss, Michael S. Dietz, Paul W. Bucher, Dunlap & Seeger, Rochester, MN, for Trustee, Plaintiff.

Mark C. Halverson, Halverson Law Office, Mankato, MN, for Defendants.

## ORDER GRANTING AND DENYING SUMMARY JUDGMENT

DENNIS D. O'BRIEN, Bankruptcy Judge.

The above entitled matter came before the Court on January 19, 2013, on cross motions for summary judgment. Scott J. Hoss appeared for the plaintiffs and Mark C. Halverson appeared for the defendants. Based upon the pleadings, files, and arguments of counsel, the Court, being fully advised in the matter, makes this **ORDER** pursuant to the Federal and Local Rules of Bankruptcy Procedure.

I

The Debtors are enrolled members of the Lower Sioux Indian Community in the State of Minnesota. Their predominant source of income is monthly per capita payments they receive from Lower Sioux. In these three adversary proceedings, the Chapter 7 trustees seek orders requiring the defendants to turnover post-petition per capita payments they receive from the Lower Sioux Indian Community, claiming that the payments are contingent property rights that existed at filing and constitute 11 U.S.C. § 541(a) property of the bankruptcy estates. The assertion is based on the plaintiffs' application of Minnesota law to determine the nature of the per capita payments. The defendants claim that the defendants had no property interest in future per capita payments at filing of the bankruptcies. They claim that tribal law, not Minnesota law, is the applicable law and that tribal law specifically provides that tribal members have no property right in future per capita payments. Plaintiffs and defendants agree that summary judgment is appropriate. The Court agrees with the defendants and holds that they had no property rights in future per capita payments at bankruptcy filing and that they are entitled to summary judgment that their bankruptcy estates have no interest in the payments.

II

The per capita payments involved in this dispute are monthly payments from net

gaming income received by the Lower Sioux Indian Community. The Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701–2721, and accompanying federal regulations, 25 CFR § 290.1– 290.26, govern Tribal Revenue Allocation Plans. Casino gaming is Class III gaming under the IGRA. *See* 25 U.S.C. § 2703(8). Each tribe that engages in casino gaming must negotiate a "compact" with its State, which must be approved by the Secretary of the Interior. *See* 25 U.S.C. § 2703(7)(E) and (10). The IGRA addresses per capita payments made out of a tribe's gaming revenues. Each tribe is required to adopt an ordinance allocating its gaming revenues, and obtain approval.

The defendants rights to receive per capita payments derive from their status as qualified members pursuant to the Lower Sioux Constitution and the Revenue Allocation Ordinance. Once the status is confirmed, a qualified member's right is contingent upon the existence of net profits and the ultimate decision by the Lower Sioux to make a distribution of those profits. However, if any profits are distributed to a qualified member, the payments must be equal for all qualified members.

The plaintiffs argue that Minnesota law determines future per capita payments to be contingent property interests and that the interests of the defendants became property of the bankruptcy estates under 11 U.S.C. § 541(a) upon the bankruptcy filings.[1] However, Minnesota law does not apply to these per capita payments. Tribal law does.

The Lower Sioux has an ordinance specific to the allocation of casino profits. The Lower Sioux Indian Community in Minnesota Gaming Revenue Allocation Ordinance identifies how the Lower Sioux allocates the "available net profits from Community-owned gaming establishments". The controlling version of the Revenue Allocation Ordinance was amended on October 27, 2009, and approved by the United States Department of Interior on December 4, 2009. The October 27, 2009, version of the Revenue Allocation Ordinance includes a new section entitled, Anti-alienation/Spendthrift Provisions, (Section 302(G)), which states:

> **Anti-alienation/Spendthrift Provisions.** The per capita payments made under this Ordinance are a personal benefit to the Community Members who qualify. The per capita payments are periodic payments, not a property right. The right to receive a per capita payments does not accrue or vest until the Community actually makes a payment to Community Members who qualify. Additionally, no benefit, right or interest of any Community Member under his (sic) Ordinance, including per capita payments, shall be subject to anticipation, alienation, sale, transfer, assignment pledge, encumbrance or charge, seizure, attachment or other legal, equitable, or other process. However, the restriction on transfer does not impair the ability of the community, its subdivisions or its wholly owned entities to exercise its right of setoff for loans or advances made to Community Members nor to child support payments governed under the Lower Sioux Indian Community Domestic Relations Code no to federal or state income tax liens. Nor shall this restriction prevent, or impair the validity of, an assignment of per capita payments that is made by a Community Member to a financial institution, if such assignment is approved, in advance, by

---

1. See: *Sprint Spectrum LP v. Comm'r of Revenue*, 676 N.W.2d 656, 662 (Minn.2004); and,

Minn. Stat. § 336.9–102(42).

922

resolution of the Lower Sioux Community Council; and the recipient of any such approved assignment shall have the right to enforce the assignment, and to compel the Lower Sioux Indian Community to honor the terms of the assignment, in an action brought in the Court of the of the Lower Sioux Indian Community.

Hoss Aff. Ex. F.

The plaintiffs claim that the provision is not effective. They argue:

The Lower Sioux's declaration that the per capita payments are not a property right is not determinative. However bold and creative, the Lower Sioux cannot simply declare that the per capita payments are, "not a property right", and thus exclude them from the bankruptcy estate. In fact, it is quite absurd to suggest that an interested party could merely declare that a contingent right is not a "property right", with any substantive effect. A rose by any other name would smell as sweet.

Plaintiffs' Motion For Summary Judgment, p. 12. Whether the provision is bold and creative does not address the question whether the Lower Sioux, a sovereign nation, has the authority to limit the definition of property right with respect to tribal property to exclude the per capita payments of tribal funds paid by the tribe to qualified members.[2] Minnesota clearly has the authority to define property rights with respect to property within its jurisdiction and which is subject to Minnesota state law. The plaintiffs offer no credible reason why the Lower Sioux nation does not enjoy similar authority with respect to property within its jurisdiction and which is subject to its law.

Future per capita payments of tribal gaming earnings to qualified tribe members pursuant to Lower Sioux Community tribal law do not constitute property rights and are not estate property of Chapter 7 debtors.

## III

Accordingly, based on the forgoing, it is hereby **ORDERED** that the defendants' motions for summary judgment are GRANTED and the plaintiffs' motions are DENIED. The defendants shall have judgment that their bankruptcy estates have no interest in post-petition per capita payments under the Lower Sioux Constitution and the Revenue Allocation Ordinance paid or payable to the defendants.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

2. Likely as not, the treatment of per capita payments has its roots in lessons learned from earlier tribal experience with per capita payments from the United States when the Sioux lost their land that became part of the state of Minnesota. The price for the land was to be paid in per capita annual installments to qualified members of the tribe. The payments were not always made timely and, even when they were timely made, it was necessary for the members to purchase subsistence goods from white traders between payments, assigning future per capita payments to the traders. The goods sold were often at highly inflated prices and it was not uncommon for unaccounted charges to be added to already highly inflated accounts. The result was often no per capita payments going to members, who were caught in repetitive cycles of assignments and rip-offs. The traders got rich and the Sioux got screwed. See generally: *North Country, The Making of Minnesota*, Mary Lethert Wingerd, University of Minnesota Press, 2010.